## IN RE JUVENILE APPEAL (83–DE)*
### (10985)

PETERS, HEALEY, PARSKEY, SHEA and GRILLO, Js.

Argued March 11—decision released June 14, 1983

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 3161, the names of the parties involved in this appeal are not disclosed and the records and briefs will not be distributed to the various libraries of the state. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Supreme Court.

Reporter of Judicial Decisions

*John C. Wirzbicki,* for the appellant (respondent mother).

*Judith M. Earl,* assistant attorney general, with whom, on the brief, were *Joseph I. Lieberman,* attorney general, *Carol Feinstein,* assistant attorney general, and *Sharon Langer,* law student intern, for the appellee (state).

*Timothy R. Cummings,* for the minor child.

SHEA, J. The respondent is appealing from the termination of her parental rights regarding her son, K, pursuant to General Statutes § 17-43a (a).[1] K was born

---

[1] "[General Statutes (Rev. to 1981)] Sec. 17-43a. TERMINATION OF PARENTAL RIGHTS OF CHILD COMMITTED TO COMMISSIONER. (a) In respect to any child committed to the commissioner of children and youth services in accordance with section 46b-129, either the commissioner, or the attorney who represented such child in the prior commitment proceeding, or an attorney appointed by the superior court on its own motion, or an attorney retained by such child after attaining the age of fourteen may petition the court for the termination of parental rights with reference to such child, including the right to petition the court for the revocation of the commitment of the child. The superior court upon hearing and notice, as provided in sections 45-61d and 45-61f, may grant such petition upon finding that over an extended period of time, which, except as hereinafter provided in this subsection, shall not be less than one year: (1) The parents have abandoned the child in the sense that they have failed to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare; or (2) the parents have failed to achieve any such degree of personal rehabilitation as would reasonably encourage the belief that at some future date they could assume a responsible position in their child's life; or (3) the parents, by reason of continuing physical or mental deficiency have, and for such period of time as will be detrimental to the best interest of the child, will be unable to provide him with the care, guidance and control necessary to his physical, educational, moral and emotional well-being; or (4) there is no ongoing parent-child relationship, which means the relationship that

in 1975 and was committed to the custody of the commissioner of the department of children and youth services (DCYS) in October, 1978. See General Statutes § 46b-129. In February, 1979, the commissioner petitioned the trial court to waive the one year waiting period required by General Statutes § 17-43a (a) and to terminate the respondent's parental rights on the grounds that she had failed to achieve any "degree of personal rehabilitation as would reasonably encourage the belief that at some future date [she] could assume a responsible position" in the life of K; and that by reason of a mental deficiency she had been "and for such period of time as [would] be detrimental to the best interest of the child, [would] be unable to provide him with the care, guidance and control necessary to his physical, educational, moral and emotional well-being . . . ." General Statutes § 17-43a (a) (2) and (3). After a trial which was completed on June 26, 1979, the trial court, *Conway, J.,* dismissed the petition in January, 1980. Five months later, in June, 1980, the department filed a new petition seeking to terminate the respondent's parental rights to her son on the same grounds alleged in the previous petition. The department also sought appointment as the statutory parent of K. Because neither the sufficiency of the evidence nor the standard of proof employed by the trial court is being challenged,[2] we need not discuss the content

ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child; or (5) that both parents, or the sole parent of such child have consented to termination of parental rights with respect to such child. The court may waive the requirement that one year expire prior to the termination of parental rights if it finds from the totality of the circumstances surrounding the child that such a waiver is necessary to promote the best interest of the child."

[2] At oral argument, counsel for the respondent conceded with refreshing candor that the claim that the trial court had failed to apply the constitu-

of the testimony presented. It is sufficient to note that after a hearing on April 30, 1981, when the testimony of a number of witnesses was presented, the trial court terminated the respondent's parental rights on both grounds alleged by the state and appointed the commissioner as statutory parent of the boy.

The respondent has appealed from that judgment. She claims error on the ground that the trial court improperly admitted the testimony of three witnesses[3] pertaining to events prior to June, 1979, when the hearing on the first termination petition occurred. According to the respondent, the doctrine of res judicata or, in the alternative, the doctrine of collateral estoppel barred the admission of such evidence. We find no error.

## I

The first issue is whether the doctrine of res judicata, or claim preclusion, prohibited the admission of evidence relating to events prior to completion of the first trial in June, 1979. "[A] former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action on the same claim. A judgment is final not only as to every matter which was offered to sustain the claim, but also as to any other admissible matter which might have been offered for that purpose. *Cromwell* v. *County of Sac,* 94 U.S. 351, 352–53, 24 L. Ed. 195 (1876); 1 Restatement (Second), Judgments §§ 19, 25; James & Hazard, Civil Procedure (2d Ed.)

---

tionally mandated clear and convincing evidence standard of proof; see *Santosky* v. *Kramer,* 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re Juvenile Appeal (83–AB),* 189 Conn. 58, 454 A.2d 271 (1983); in its termination of the respondent's parental rights could not be made in good faith.

[3] The respondent has objected to portions of the testimony of the woman who was K's foster mother from August of 1977 to November of 1979, of a social worker for DCYS and of a psychiatrist.

§ 11.3." *State* v. *Aillon,* 189 Conn. 416, 423–24, 456 A.2d 279 (1983); *Corey* v. *Avco-Lycoming Division,* 163 Conn. 309, 317, 307 A.2d 155 (1972), cert. denied, 409 U.S. 1116, 93 S. Ct. 903, 34 L. Ed. 2d 699 (1973). The respondent's first claim of error, therefore, cannot be sustained if the dismissal of the first petition was less than a judgment on the merits of the state's claim that the statute mandated the termination of the respondent's parental rights.

As the respondent concedes, the 1979 petition raised an issue of waiver which was not before the trial court at the second hearing. General Statutes § 17-43a (a) provides that, in respect to a committed child on whose behalf a petition to terminate parental rights has been brought, the Superior Court may grant the petition if it finds that over an extended period of time, not less than one year, any of the five conditions enunciated by the legislature as justifying termination has existed. The statute continues "[t]he court may waive the requirement that one year expire prior to the termination of parental rights if it finds from the totality of the circumstances surrounding the child that such a waiver is necessary to promote the best interest of the child." Despite the presence of this additional issue at the first hearing, the respondent contends that the trial court fully considered the state's two grounds for termination and decided the issues in her favor. The plain language of the trial court's memorandum indicates otherwise. No reference is made to the petitioner's claim that the mother's rights be terminated because of a continuing mental deficiency. Moreover, the trial court stated: "The Court cannot find that the mother will not rehabilitate herself. There is no question that she wants the child returned to her and is very concerned about his best interest. Most of the visits she had with him went well. Certainly the Department of

Children and Youth Services should encourage [the respondent] to continue to seek help to rehabilitate and make visits with her child more frequent. The Court finds that the year requirement should not be waived and the termination of parental rights is denied." There can be no doubt that the dismissal of the first petition was based on the trial court's determination that the petition, filed only four months after K was committed, was premature under General Statutes § 17-43a (a).

The respondent argues that the doctrine of res judicata also is applicable because the first judgment acted to bar not only relitigation of the claims that were made but also of other matters which could have been presented to sustain the claim. DCYS interprets General Statutes § 17-43a (a) as requiring a request for waiver whenever a child has been committed to the commissioner's care for less than one year. The trial court apparently interpreted the statute in a similar manner.[4] The respondent contends the statute would support a reading that, where the state is aware of evidence which would support the termination of the parent-child relationship extending over a period of a year or more, the § 17-43a (a) waiver provision is inapplicable. According to the respondent, if the state had pursued this argument, the court in the first hearing could have found the waiver requirement inapplicable and could have ruled on the merits of the petition for termination. Because the state did not so argue, the respondent concludes, res judicata bars the admission of evidence of events prior to the first termination hearing to support the state's repeated claim for termination.

---

[4] Since the disposition of the issues as presented does not require an analysis of the waiting period provision of General Statutes § 17-43a (a), we reserve comment on the interpretations given to that provision by the parties and the trial court.

The respondent's argument misinterprets the doctrine of res judicata. Res judicata prohibits only a later cause of action based on matters which could have sustained the claim determined on the merits in the former judgment—not a cause of action which might have been determined only if an additional argument, not made in the previous case, had proved persuasive on the separate and distinct claim which formed the basis of the prior judgment. That the state in the first termination hearing could have argued that waiver was not necessary cannot transform a judgment based on the ancillary issue of waiver into a judgment on the merits of the state's claim for termination.

## II

Collateral estoppel, or issue preclusion, is that aspect of res judicata which prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties upon a different claim. *State* v. *Aillon,* 189 Conn. 416, 424 n.8, 456 A.2d 279 (1983); *State* v. *Wilson,* 180 Conn. 481, 485, 429 A.2d 931 (1980); 1 Restatement (Second), Judgments § 27; James & Hazard, supra, §§ 11.3 and 11.17.

Neither party contends that the grounds alleged as justifying the termination of the respondent's parental rights were not fully litigated at the first hearing. It is not clear that the evidence admitted in the second hearing over the objections of the respondent related solely to issues that were necessarily determined by the first court. We have previously concluded that the dismissal of the first petition was premised on the issue of waiver and not upon the merits of the state's claims regarding the fitness of the respondent as a parent. The issue decided by that court was, therefore, whether "from the totality of the circumstances surrounding the

child" it appeared that a waiver of the one year requirement was "necessary to promote the best interest of the child." General Statutes § 17-43a (a). It does not follow that the issues of whether the respondent had failed to rehabilitate herself or whether she suffered from a mental defect which rendered her unable to care for her child as required by statute were necessarily determined at the first hearing.

Even if the first court had determined the petition on the merits, finding the state had failed to present sufficient proof on either ground alleged, collateral estoppel would not sustain the respondent's position on the admissibility of events prior to the trial of the first petition. The record does not reveal nor can the respondent point to a finding of the second court which is inconsistent with or contrary to a finding of the first. Moreover, a finding as to an ultimate issue is not necessarily conclusive of all evidentiary issues which may have led to that finding. *Yates* v. *United States,* 354 U.S. 298, 338, 77 S. Ct. 1064, 1 L. Ed. 2d 1356 (1957) (dicta); see James & Hazard, supra, § 11.18; 1 Restatement (Second), supra, § 27, comment j; 1B Moore, Federal Practice (2d Ed. 1965) ¶ 0.442[2]; compare *Albanese* v. *N. V. Nederl Amerik Stoomv. Maats,* 279 F. Sup. 635 (S.D.N.Y. 1967), rev'd on other grounds, 392 F.2d 763 (2d Cir. 1968); *People ex rel. McCanliss* v. *McCanliss,* 255 N.Y. 456, 459, 175 N.E. 129 (1931); *Zabriskie* v. *Zoloto,* 22 App. Div. 2d 620, 624, 257 N.Y.S.2d 965 (1965). Thus a blanket prohibition against the admission of all evidence relating to events prior to the 1979 hearing, without regard to whether the evidence was relevant solely to an issue explicitly or necessarily decided by the prior judgment, is not mandated by the principle of collateral estoppel.

## III

Although we have resolved the two issues expressly raised by the respondent in her brief, we are concerned with problems which may arise from successive petitions for termination of parental rights.[5] The judicial doctrines of res judicata and collateral estoppel are based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate. See *Corey* v. *Avco-Lycoming Division,* 163 Conn. 309, 316-17, 307 A.2d 155 (1972), cert. denied, 409 U.S. 1116, 93 S. Ct. 903, 34 L. Ed. 2d 699 (1973); James & Hazard, supra, § 11.2. Stability in judgments grants to parties and others the certainty in the management of their affairs which results when a controversy is finally laid to rest. The doctrines of preclusion, however, should be flexible and must give way when their mechanical application would frustrate other social policies based on values equally or more important than the convenience afforded by finality in legal controversies. See 1 Restatement (Second), Judgments § 20, comment n; § 24, comment f; § 26(1) (f), comment i; § 28.

Because the issue of whether termination of parental rights is appropriate must be decided upon the basis of conditions as they appear at the time of trial, the doctrines of res judicata and collateral estoppel ordinarily afford very little protection to a parent who has once successfully resisted an attempt to terminate his rights to a child. Parents have a constitutionally protected right to raise and care for their own children. *Stanley* v. *Illinois,* 405 U.S. 645, 651, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972). This right is not free from intervention by the state, however, when the continuing parens patriae interest of the state in the well being

---

[5] Some discussion of these concerns took place during oral argument.

of children is deemed by law to supercede parental interests. See General Statutes §§ 17-43a, 46b-129 (e); *In re Juvenile Appeal (83–BC)*, 189 Conn. 66, 77, 454 A.2d 1262 (1983); *Anonymous* v. *Norton*, 168 Conn. 421, 430, 362 A.2d 532, cert. denied, 423 U.S. 935, 96 S. Ct. 294, 46 L. Ed. 2d 268 (1975). An adjudication that a ground for termination did not exist at one time does not mean such ground has not arisen at a later time. The possibilities for harassment and judge shopping which successive petitions may present are, however, not to be dismissed lightly.

We are not today presented with the issue of whether, and under what circumstances, the state may petition for termination of parental rights after a previous petition has been dismissed on the merits in favor of a respondent parent. No impropriety has been charged against the state in bringing the second petition in this case and the evidence presented indicated that a substantial deterioration in the relationship of the respondent with her son had occurred during the interval between the two petitions. Thus we do not address the issue of whether the adoption of a material change in circumstances standard as an evidentiary threshold to the admission of evidence of events occurring prior to an earlier attempt to terminate parental rights sufficiently safeguards the parent-child relationship from the possible damage engendered by a continuing threat of state intervention. We note that other jurisdictions have adopted variations of this standard; see *Matter of Newman*, 49 Or. App. 221, 227–28, 619 P.2d 901 (1980) (res judicata and collateral estoppel do not automatically limit a second termination proceeding to consideration of facts arising subsequent to first proceeding where substantial material facts justify the filing of a new petition); *In re G.V.*, 394 A.2d 1126, 1128 (Vt. 1978) (to modify juvenile court order, a petition

must show changed circumstances as required by statute; res judicata does not prohibit the admission of evidence prior to issuance of last order to determining whether change occurred). Such a standard is analogous to the threshold issue considered by our courts in reviewing requests to modify orders for the custody of minor children. See *Sullivan* v. *Sullivan,* 141 Conn. 235, 104 A.2d 898 (1954).[6]

We conclude that neither res judicata nor collateral estoppel barred the trial court from considering the testimony as to occurrences prior to the former termination hearing.

There is no error.

In this opinion the other judges concurred.

---

[6] We recognize that the holding in *Sullivan* v. *Sullivan,* 141 Conn. 235, 104 A.2d 898 (1954), was based on General Statutes § 46b-52, and its predecessor statutes, which provide that in "any controversy before the superior court as to the custody or care of minor children . . . the court may at any time make or modify any proper order regarding the education and support of the children and of care, custody and visitation . . . ." The legislature has not granted identical authority in juvenile matters, but has provided that the Superior Court "shall have authority to make and enforce . . . orders directed to . . . adult persons owing some legal duty to a child . . . as it deems necessary or appropriate to secure the welfare, protection, proper care and suitable support of a child . . . subject to its jurisdiction or otherwise committed to or in the custody of the commissioner of children and youth services . . . ." General Statutes § 46b-211.