[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Claris Haylett, appeals from a decision made on March 21, 1986, of the Connecticut Commission on Human Rights and Opportunities, alleging that it violated Conn. Gen. Stat. 46a-83 and 46a-84, when it dismissed her complaint of age discrimination after unsuccessful conciliation efforts, but before certification to a public hearing.
Procedural History
The plaintiff Claris Haylett's hereinafter "Haylett" appeal challenges the denial by the Commission on Human Rights and Opportunities hereinafter "CHRO" by letter dated March 21, 1986, of Haylett's timely reconsideration request of the dismissal of her complaint. That complaint alleged her termination based on age discrimination by her employer, defendant Hebrew Home and Hospital hereinafter "Hebrew Home" in violation of Conn. Gen. Stat. 46a-60 (a)(1). The complaint further alleged that the defendant Laborers International Union denied her membership rights because of age discrimination.
In her appeal, filed April 22, 1986, pursuant to Conn. Gen. Stat 4-183, Haylett alleges that after the Hebrew Home had discharged her, she filed an age discrimination complaint with the CHRO on March 24, 1981, against her employer, pursuant to Conn. Gen. Stat. 46a-82. On February 5, 1982, an investigator for the aging issued a final memorandum and summary, finding that there was reasonable cause for her charges against the Hebrew Home. (Attachment A). Notice of the reasonable cause finding was sent to the Hebrew Home by letter dated March 2, 1982. (Attachment B). Conciliation conferences pursuant to Conn. Gen. Stat. 46a-83 (a) were held on March 15, 1982 (Attachment B) and June 14, 1982 (Attachment C).
The Hebrew Home was notified by letter dated June 2, 1982 that pursuant to Conn. Gen. Stat. 46a-84, "in case of failure to eliminate the discriminatory practice complained of, by CT Page 1314 conference, conciliation and persuasion, this case will be certified to a public hearing." (Attachment C). Notice that the case would be certified to a hearing if no "concrete" settlement was forthcoming by August 13, 1982 was sent to the attorneys representing Hebrew Home and the Laborer's International Union of North America and to plaintiff Haylett, by letters dated August 5, 1982. (Attachment D). The conciliation efforts were unsuccessful. (Attachment E).
Haylett alleges that after the unsuccessful conciliation efforts, the legal division of the CHRO, reviewed the file and concluded that her case was not "litigation worthy." (Appeal para. 6, 7). Nonetheless, Haylett's attorney was not informed of this until February 17, 1984, "almost six months after the decision was made and almost a year and half after he had been advised that the case would [be] certified to public hearing if attempts at conciliation were unsuccessful." (Appeal para. 8).
The CHRO ultimately dismissed the complaint and notified Haylett of this action on March 28, 1985. (Appeal para. 12). On April 1, 1985, pursuant to Conn. Gen. Stat. 4-181a, Haylett requested that the CHRO reconsider its dismissal of her complaint. (Appeal para. 13). By letter dated March 21, 1986, the request for reconsideration was denied. (Exhibit 1).
A motion to default defendant Laborers International Union of North America was granted on September 8, 1986. The CHRO's motion to dismiss for lack of subject matter jurisdiction and insufficiency of process was granted by the superior court on February 2, 1987. On appeal, the supreme court remanded the case to the trial court with direction to deny CHRO's motion to dismiss (Haylett v. CHRO, 207 Conn. 547, 555 (1988)), which motion was denied on June 13, 1988.
The Hebrew Home filed its answer on August 9, 1988. The CHRO also filed its answer on August 9, 1988 along with a special defense stating that,
 Petitioner in this matter was an intervening plaintiff in an action entitled Todd v. Green, Civil Action No. H-85-229. This action was dismissed with prejudice pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure as part of a settlement agreement approved by The Honorable Alan Nevas, U.S. District Judge for the District of Connecticut. The settlement agreement has res judicata/collateral estoppel effect on part or all of this state court action; in that claims that were raised or could have been raised in the federal action are attempting to be CT Page 1315 relitigated as part of this present action.
The pleadings are now closed.
Haylett filed her appellate's brief on January 27, 1989 to which the Hebrew Home filed a response on February 17, 1989, joining in the brief of the CHRO, which was filed on February 27, 1989.
The Connecticut Civil Liberties Union Foundation hereinafter ("CCLU") was permitted to file a brief as amicus curiae on March 31, 1989. "It is the contention of amicus curiae that the original finding of `reasonable cause' should be reinstated on the grounds that, both definitionally as well as in its application to her, the reasonable cause standard which then governed CHRO hearings procedures denied to the appellant her rights of due process under both the federal and state constitutions." (CCLU Brief p. 2). On April 14, 1989, the CHRO filed a reply to the CCLU brief, asserting that the amicus curiae arguments "are not well taken and are not properly before the court."
Plaintiff, Claris Haylett died on March 10, 1989 and on November 8, 1989 her executor, Vibert Grant, filed a motion to be substituted as party plaintiff, pursuant to Conn. Gen. Stat.52-599.
Aggrievement
 Appeals to the courts from decisions of administrative officers exist only under statutory authority. In this instance, the statutory authority is General Statutes. . . . 4-183 (a) which provides in relevant part: `A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a decision in a contested case is entitled to judicial review by way of appeal . . . . .' We have stated that `[p]leading and proof of aggrievement [is] . . . a prerequisite to the trial court's jurisdiction over the subject matter of the plaintiff's appeal.' (Emphasis Supplied).
Park City Hospital v. Commission on Hospitals Health Care,210 Conn. 697, 702 (1989), (citations omitted).
 [Proof of aggrievement] "encompasses a well-settled twofold determination. First, the party claiming aggrievement must successfully demonstrate a specific, personal and legal CT Page 1316 interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific, personal and legal interest has been specially and injuriously affected by the decision.
Connecticut Business Industries Assn. Inc. v. CHHC, 214 Conn. 726,730 (1990). See also Sprague v. CHRO, 1 CSCR 395 (June 5, 1986 Purtill, J.)
In the present appeal, Haylett's complaint to the CHRO alleging her illegal job termination because of age discrimination was denied reconsideration by letter dated March 21, 1986. Haylett is statutorily aggrieved for purposes of bringing this appeal.
DISCUSSION
Standard and Scope of Review
Judicial review of the CHRO's actions is governed by the Uniform Administrative Procedure Act, and the scope of that review is quite restricted. Lawrence v. Kozlowski, 171 Conn. 705,707 (1976), cert denied, 431 U.S. 969 (1977). The conclusion reached by the CHRO must be upheld if it is legally supported by the evidence. Id. at 708. The credibility of witnesses and the determination of factual matters are matters within the province of the administrative agency. Id. If the evidence in the record supports the decision, it cannot be disturbed. Id.
The "substantial evidence" rule governs judicial review of administrative factfinding under Conn. Gen. Stat. 4-183 (g). Briggs v. State Employees Retirement Commission, 210 Conn. 214,217 (1989). An administrative finding is supported by "substantial evidence" if the record affords a "substantial basis of fact from which the fact in issue can be reasonably inferred." Id.
Nevertheless, the administrative body "cannot modify, abridge or otherwise change the statutory provisions under which it acquires authority unless the statutes expressly grant it that power. Waterbury v. Commission on Human Rights 
Opportunities, 160 Conn. 226, 230 (1971). The UAPA's objective is . . . the promulgation . . . of a code governing action and conduct in the particular field of regulation so those concerned may know in advance all the rules of the game, so to speak, and may act with reasonable assurance. . . ." Goldberg v. Insurance CT Page 1317 Department, 9 Conn. App. 622, 626-627 (1987), reversed on other grounds, Goldberg v. Insurance Department, 207 Conn. 77, 83
(1988).
Issues Raised
1. Haylett claims that the CHRO violated Conn. Gen. Stat.46a-83 and 46a-84, when it failed to certify her complaint and schedule a hearing after conciliation failed. Conn. Gen. Stat. 46a-83 states in pertinent part:
 After the filing of any discriminatory practice complaint, the chairman of [the CHRO] shall refer the same to a commissioner or investigator to investigate and if the commissioner or investigator determines after the investigation that there is reasonable cause for believing that a discriminatory practice has been or is being committed as alleged in the complaint, he shall endeavor to eliminate the practice complained of by conference, conciliation and persuasion.
Conn. Gen. Stat. 46a-84 states in pertinent part:
 (a) In case of failure to eliminate a discriminatory practice complained of pursuant to section 46a-82, the investigator or investigating commissioner shall certify the complaint and the results of his investigation to the chairman of the commission and to the attorney general.
 (b) Upon certification of the complaint, the chairman of the commission shall appoint a hearing examiner or one member of the commission to act as a hearing officer to hear the complaint and shall cause to be issued and served in the name of the commission a written notice, together with a copy of the complaint, as the same may have been amended, requiring the respondent to answer the charges of the complaint at a hearing before the hearing officer at a time and place to be specified in the notice.
The appellant argues in her brief that "shall" in section 46a-84 (a) is mandatory and that the complaint must be certified since "reasonable cause" was found and conciliation failed. CT Page 1318
The CHRO argues in its brief that "shall" in section46a-84 (a) is directory. The CHRO further points out in its brief that the Hebrew Home claimed to have discharged Haylett for stealing two cans of sardines, although Haylett claimed she had taken those items at the request of a patient. The CHRO further stated that during conciliation, that patient testified that she did not like sardines and the CHRO introduced its Personnel Policies Practices Manual, which states that "removal of the Home's property without permission" shall subject the offender to "immediate dismissal." The CHRO argues that this evidence was considered in its pre-certification procedures during which Haylett's case was found to be "non-litigation worthy", pursuant to the CHRO's Policy and Procedure Manual because the complaint was not yet certified at the time of that determination, the CHRO argues that certification was not necessary.
A statute is to be construed so that all its parts have meaning; so that it makes common sense, and so that it does not lead to bizarre results. Eagle Hill Corporation v. Commission on Hospitals Health Care, 2 Conn. App. 68, 75 (1984), (citations omitted). Accordingly, the court has interpreted section 46a-84
to mean that, "if [the] informal procedures [of section 46a-83] prove unsuccessful, the CHRO must certify the complaint, hold a hearing and order appropriate relief. General Statutes 46a-84,46a-86." Sullivan v. Board of Police Commissioners, 196 Conn. 208,216 (1985), (emphasis added); Ierardi v. CHRO, 15 Conn. App. 569,579 (1988). Thus, the word "shall" in section 46a-84
is mandatory.
2. Haylett argues that the CHRO determined that her case was not "litigation worthy" according to regulations made in violation of the rule making procedures of the UAPA. Conn. Gen. Stat. 4-166 (7) states in pertinent part:
 `Regulation' means each agency statement of general applicability, without regard to its designation, that implement, interprets, or prescribes law or policy, or describes the organization, procedure, or practice requirements of any agency. The term includes the amendment or repeal of a prior regulation, but does not include (A) statements concerning only the internal management of any agency and not affecting private rights or procedures available to the public, . . . or (C) intra-agency or interagency memoranda.
In the present case, the CHRO investigator found reasonable cause to infer age discrimination; however, after a pre-certification review, it was determined that the case was CT Page 1319 not "litigation worthy", and thus not suitable for certification and hearing. (Attachments A, B, J). The determination that the case was not "litigation worthy" was made pursuant to the CHRO's Policy and Procedure Manual, which the appellant claims contains regulations made in violation of the rulemaking procedures of the UAPA. The CHRO claims the manual merely pertains to internal management and review of claims. (Exhibit 1; Complaint para. 17, 18; CHRO Brief p. 31).
 A `regulation' is a regulation by whatever designation it is called. The criteria that determine whether administrative action is a `regulation' are neither linguistic nor formalistic. It is not conclusive that an agency has, or has not, denominated its action a `regulation' or that it has, or has not promulgated its procedurally in the fashion that would be required of a `regulation'. The test is rather, whether `a rule' has a substantial impact on the rights and obligations of parties who may appeal before the agency in the future.' Implicit in this formulation is the recognition that a regulation must be a rule of sufficient generality to impinge substantially on others who will deal with the agency at a future time.
Persico v. Maher, 191 Conn. 384, 400-401 (1983) (citations omitted).
"This does not mean, however, that every administrative decision which may have precedential significance beyond the facts and party before it becomes ipso facto a regulation. Like courts, `administrative agencies must necessarily interpret statutes which are made for their guidance.' Eagle Hill Corporation, 2 Conn. App. at 76 quoting Connecticut Life Health Ins. Guaranty Ass'n v. Jackson, 173 Conn. 352, 356-57
(1977).
 [T]he short-hand description of a policy as being "interpretive" has led courts to conclude that such a statement is only the administrator's construction of a statute and an anticipation of what might be done by the courts with that statute. But it appears that it is what the administrative agency does rather than `the precise source of its power which is of importance in classifying a rule or regulation as "legislative"' [substantive] or "interpretive." The critical distinction between a substantive CT Page 1320 rule and a general statement of policy is the different practical effect that these two types of pronouncements have in subsequent administrative proceedings. A properly adopted substantive rule establishes a standard of conduct which has the force of law."
Cheshire Convalescent Center v. Comm. on Hospitals a Health Care, 34 Conn. Sup. 225, 239 (1977) (citations omitted).
When the CHRO's policy is considered a regulation subject to the UAPA, it is required to be promulgated with certain formalities. Persico, 191 Conn. at 405. If the policy was not adopted in accordance with the procedural requirements of the UAPA, it may not be enforced to deny the plaintiff's [right to a hearing]. Id.
It is submitted that in the instant case the CHRO's pre-certification procedures for determining whether a case is "litigation worthy" have a substantial impact on the rights and obligations of parties who may appear before the agency in the future. It is submitted therefore that the "litigation worthy" determination is substantive since withholding certification and a hearing goes further than anticipating what the courts will do with a statute. Thus, the "litigation worthy" determination procedures should have been promulgated with the formalities of the UAPA and that accordingly, they may not be enforced to deny Haylett a hearing.
It should be noted that, "since Ms. Haylett's complaint . . . the CHRO has rewritten the section of the Policy and Procedure Manual defining reasonable cause, and no longer defines reasonable cause as `litigation worthy'." Plaintiff's brief, p. 9 n. 2). Thus, in subsequent cases, once reasonable cause is found, and conciliation fails, the complaint would be certified with no "litigation worthy" consideration.
3. The CHRO's special defense claims that Haylett was an intervenor in a federal court action entitled Todd v. Green, Civil Action No. H-85-229. (Exhibit 5 and 6). The CHRO notes that such action was dismissed with prejudice pursuant to rule 41(a)(2) of the Federal Rules of Civil Procedure as part of a settlement agreement that is "binding on the named plaintiff's and all those seeking to intervene who are represented by Attorney Alisburg." (Special Defense, Exhibit 3). Thus, the CHRO claims that the settlement agreement has res judicata/collateral estoppel effect on the instant action.
Res judicata or claim preclusion prevents a litigant from CT Page 1321 reasserting a claim that has already been decided on the merits. Virgo v. Lyons, 209 Conn. 497, 501 (1988). Collateral estoppel, or issue preclusion prevents a party from relitigating an issue that has been determined in a prior suit, Id.; upon a different claim. In Re Juvenile Appeal (83-DE), 190 Conn. 310, 318 (1983).
Haylett filed a motion and a complaint in intervention dated September 3, 1985, in Todd v. Green, Civil Action No. H-85-229 (D.Conn.), a classification which was brought to the United States District Court on August 7, 1985. (Exhibit 5). The original federal complaint alleged the CHRO's denial of due process, denial of equal protection, violation of the Rehabilitation Act of 1973; and violation of Title VII of the Civil Rights Act and the Age Discrimination Act in Employment Act. (Exhibit 2). Haylett's motion for leave to intervene in the federal action was brought on the ground that common questions of law and fact of discrimination and denial of due process by the CHRO are involved. (Exhibit 6). The settlement agreement, dated January 27, 1988, dismissed that action with prejudice. (Exhibit 3).
In paragraph 23 of Haylett's state court complaint, filed April 22, 1986, she issues a Notice of Reservation of Claims for Federal Court, specifying those facts alleging violation of the due process clause of the United States Constitution. Haylett argues in her brief that res judicata and collateral estoppel do not apply because there is no identity of claims or issues, nor was the Todd case subject to a final decision on the merits.
 The judicial doctrine of res judicata and collateral estoppel are based on the public policy that a party should not, be able to relitigate a matter which it already has had an opportunity to litigate. Stability in judgments, grants to parties and others the certainty in the management of their affairs which results when a controversy is finally laid to rest. The doctrine of preclusion, however, should be flexible and must give way when their mechanical application would frustrate other social policies based on values equally or more important than the convenience afforded by finality in legal controversies.
In Re Juvenile Appeal (83-DE), 190 Conn. 310, 318 (1983).
A judgment is final not only as to every matter which was offered to sustain the claim, but also as to any other admissible matter which might have been offered for that purpose. In Re Juvenile Appeal (83-DE), 190 Conn. at 313. Res judicata, however, does not prohibit a cause of action which might have been determined only if an additional argument, not made in the CT Page 1322 previous case, had proved persuasive on the separate and distinct claim which formed the basis of the prior judgment. Id. at 316.
The basic rule that governs res judicata is that "[w]hen a valid and final personal judgment is rendered in favor of the plaintiff: (1) [t]he plaintiff cannot thereafter maintain an action on the original claim or any part thereof, although he may be able to maintain an action upon the judgment." Orselet v. Dematteo, 206 Conn. 542, 545 (1988) quoting Duhaime v. American Reserve Life Ins. Co., 200 Conn. 360, 364 (1986), (emphasis added). "Thereafter, we examined the definition of `original claim' as set forth in the Restatement [(Second) of Judgment] in 24 and 25, and adopted its transactional test." Orselet,206 Conn. at 545. The transactional test requires that:
 the claim [that is] extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. What factual grouping constitutes a `transaction', and what groupings constitutes a `series' are to be determined pragmatically giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit and whether their treatment as a unit conforms to the parties expectation or business understanding or usage.
Id. at 545-546.
Applying the "transactional test" to the present appeal, it is submitted that the "original claim" in Todd, that the CHRO treated age and disability discrimination cases differently than it did race and sex discrimination cases, pragmatically, is different from the state claim that the CHRO violated the UAPA and its own regulations. While the facts are related in time, space and origin, they are not related by motivation. Further, since one is a federal claim and one a state law claim, they also do not form a convenient trial unit, nor would the parties have expected them to be treated as a unit. Accordingly, under the "transactional test", the state action is not barred by res judicata.
For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. Virgo v. Lyons, 209 Conn. 497, 501 (1988). It also must have been actually decided and the decision must have been necessary to the judgment. Id. CT Page 1323
"A consent decree, [or judgment based on a settlement], although enforceable like any other judicial decree, is not a judicial determination of any litigation right." Gagne v. Norton,189 Conn. 29, 34 (1983). "The essence of the judgment is that the parties in litigation have voluntarily entered into an agreement setting their. . . . disputes at rest and that, upon this agreement, the court has entered judgment conforming to the terms of the agreement." Id. If the federal decree was intended by the parties to dispose only of federal court matters, rather than the entire controversy, then extrinsic evidence could have been offered to show the true scope of the agreement Id. at 34-35.
In Gagne, the state court barred the administrative appeal which claimed retroactive monetary relief because the parties had entered into a contract decree in a prior federal action which had involved similar factual claims and issues, and where no such relief had been awarded. Id. The court stated that "[b]ecause a consent decree represents a settlement of the controversy by the parties thereto it is usually presumed that the parties intended to settle all aspects of the controversy, including all issues raised by the papers comprising the record." Id. Gagne was distinguished, however, in a subsequent case where the plaintiff was an intervenor. Connecticut Water Co. v. Beausoleil, 204 Conn. 38,51 (1987). In pertinent part that court reasoned that as an intervenor, the plaintiff had not framed the claims [or issues] in the federal action and had merely endorsed the stipulation agreement. Id. Thus, the court held that the plaintiff was not precluded from pursuing a new claim for retroactive monetary relief in the state court.
As an intervenor in the Todd case, Haylett did not frame the claims and issues of the complaint. As in Connecticut Water Co., Haylett did not take an active role in the settlement agreement. Paragraph 23 of Haylett's state complaint would suffice as extrinsic evidence showing that she planned to separate her state and federal claims and issues. Thus, Haylett should be permitted to pursue those claims and issues outside the settlement agreement.
The CCLU has submitted a brief to this court as Amicus Curiae, raising a due process claim. In paragraph 23 of her complaint, Haylett reserved her due process claim to the federal court. The CHRO, in its reply brief dated April 14, 1989, objects to the CCLU introducing this claim in state court.
In State v. Mercer, 208 Conn. 52 (1988), the court stated that:
 The amici, Connecticut Civil Liberties Union Foundation et al; argue that the hearing and CT Page 1324 the trial court's subsequent revelations violated the defendant's constitutional rights to privacy and equal protection. Although we recognize the significance of this claim, we decline to review it as the defendant does not distinctly raise it himself. Simons v. Canty, 195 Conn. 524, 529
n. 8 (1985).
Haylett's due process claim was settled in federal court and was not presented to the state court by her. As in Mercer and in Simons, the CCLU cannot now raise such a claim on Haylett's behalf.
CONCLUSION
Since res judicata and collateral estoppel should not bar Haylett's state claims and issues, and since the CHRO's "litigation worthy" determination was made following regulations adopted in violation of the UAPA, this appeal is sustained.
O'CONNOR, J.