In the Matter of THAMES RIVER AS-
SOCIATES LIMITED PARTNER-
SHIP, Debtor.

THAMES RIVER ASSOCIATES LIM-
ITED PARTNERSHIP, Shawmut
Bank, N.A., Plaintiffs,

v.

WILLIAM GUIEL AND SON, Defendant.

Bankruptcy No. 2–92–05020.
Adv. No. 2–93–2165.

United States Bankruptcy Court,
D. Connecticut.

Nov. 2, 1993.

Martin Chorches, Chorches & Novak, P.C., Wethersfield, CT, for Thames River Associates Ltd. Partnership, plaintiff-debtor.

S. Joel Suisman and Raymond L. Baribeault, Jr., Suisman, Shapiro, Wool, Brennan & Gray, P.C., New London, CT, for Shawmut Bank, plaintiff.

Jeffrey N. Low, Fitzgerald, Gordon, Chinigo & Leone, Norwich, CT, for defendant.

*MEMORANDUM OF DECISION
ON CROSS–MOTIONS FOR
SUMMARY JUDGMENT*

ROBERT L. KRECHEVSKY, Chief Judge.

I.

In this proceeding the co-plaintiffs, Thames River Associates Limited Partner-

ship, the debtor in possession (the debtor), and Shawmut Bank, N.A. (the Bank), the holder of a first mortgage on the debtor's property, seek a judgment avoiding a mechanic's lien recorded against the property by the defendant, William J. Guiel and Son (Guiel). The plaintiffs allege Guiel executed a lien waiver relinquishing its lien rights to the property. Guiel has moved for summary judgment contending the doctrine of res judicata bars relief to the plaintiffs in light of a prepetition state-court judgment following an arbitration proceeding which determined the rights of the parties. The plaintiffs deny the applicability of res judicata principles to their complaint, and have cross-moved for summary judgment contending the effect of the asserted lien waiver is conclusive on Guiel's right to claim a mechanic's lien. Guiel, in response to the plaintiffs' cross-motion for summary judgment, denies it executed a lien waiver and asserts it thereby has raised a genuine issue as to a material fact precluding the plaintiffs' right to summary judgment.

## II.

### BACKGROUND

The debtor owns and operates a residential apartment complex known as Winthrop Square Apartments in New London, Connecticut (the property). On November 10, 1987, the debtor entered into an agreement (the agreement) with Guiel for Guiel to serve as construction manager in a renovation of the property. The agreement contained a provision requiring that disputes relating to the agreement be arbitrated before the American Arbitration Association.[1]

A dispute arose between the parties and Guiel left the job. On June 23, 1989, Guiel recorded a mechanic's lien on the New London land records against the property to secure alleged unpaid claims. Guiel, on August 28, 1989, started a mechanic's lien foreclosure action in state court which named the debtor, the Bank, and various other recorded encumbrancers as defendants.

The debtor, by motion dated January 5, 1990, moved pursuant to paragraph 14.1 of the agreement to stay the state-court proceedings pending arbitration "to determine the amount of money due Guiel from Thames River, if any." Debtor's Motion To Stay Proceedings at 5. The state court granted the motion, the matter was submitted to arbitration, and, on December 9, 1991, the arbitrators awarded Guiel $231,247.69 in damages plus $60,534.46 interest to the date of the award, with interest thereafter accruing at 10.85 percent per annum. Guiel moved to confirm the award and the state court, on July 21, 1992, entered the requested judgment.

After Guiel amended its complaint to include the amount awarded through the arbitration, the debtor and the Bank asserted by special defense and counterclaim that the mechanic's lien was unenforceable because Guiel had previously executed a waiver of its right to file a mechanic's lien on the property. Guiel, in response, asserted the res judicata effect of the arbitration proceeding. Prior to further action in the state court, the debtor, on December 23, 1992, filed its chapter 11 petition.

The debtor initiated the present proceeding on April 21, 1993, and the Bank was joined as a party-plaintiff on August 12, 1993. All parties acknowledge that the proceeding to determine the validity of Guiel's mechanic's lien is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(K) (core proceedings include determination of validity of liens).

## III.

### DISCUSSION

Guiel's motion for summary judgment contends that the doctrine of res judicata prevents this court from adjudicating the validity of the mechanic's lien because "the arbitrator's award of [December 9, 1991] and the confirmation thereof ... and subsequent judgment [thereon] act to preclude [the

---

1. Paragraph 14.1 of the agreement states:
   All claims, disputes and other matters in question arising out of, or relating to, this Agreement or the breach thereof ... shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise.

plaintiffs] from contesting the validity of its mechanic's lien." Guiel's Brief at 24. The plaintiffs respond that the arbitration submission did not include the determination of the validity of the mechanic's lien, and, in any event, the Bank was not bound by any principle of res judicata because it was neither a party to the agreement nor to the arbitration proceeding.

### A.

■ Guiel's res judicata defense is based on claim preclusion grounds. Connecticut law governs whether Guiel's assertion that claim preclusion bars the introduction of a lien waiver in the present proceeding is correct.[2] Under Connecticut law, claim preclusion prevents a party from asserting for the first time in a subsequent proceeding " 'any claims relating to the cause of action which ... *might* have been made' " in a prior proceeding. *Scalzo v. City of Danbury*, 224 Conn. 124, 128, 617 A.2d 440 (1992) (emphasis added) (quoting *Corey v. Avco–Lycoming Division*, 163 Conn. 309, 317, 307 A.2d 155 (1972), *cert. denied*, 409 U.S. 1116, 93 S.Ct. 903, 34 L.Ed.2d 699 (1973)); *see also State v. Ellis*, 197 Conn.

436, 463, 497 A.2d 974 (1985) ("A judgment is final not only as to every matter which was offered to sustain the claim, but also as to any other admissible matter which might have been offered for that purpose.").[3]

Determining what matters are precluded requires defining the original "claim." Guiel cites the Connecticut Supreme Court's adoption of the Second Restatement of Judgments "transactional test" and argues that the matter of the validity of the mechanic's lien was a matter within the claim submitted to the arbitrators and which is now precluded by the arbitration award and the state-court judgment entered in accordance with the award. *See Commissioner of Envtl. Protection v. Connecticut Building Wrecking Co.*, 227 Conn. 175, 189, 629 A.2d 1116 (1993) ("We have adopted a transactional test as a guide to determining whether an action involves the same claim as an earlier action so as to trigger operation of the doctrine of res judicata.") (citing Second Restatement of Judgments); *Duhaime v. American Life Ins. Co.*, 200 Conn. 360, 511 A.2d 333 (1986); *Restatement (Second) of Judgments* § 24 (1980).[4] Guiel concludes in a mechanical ap-

**2.** According to the federal full faith and credit statute, 28 U.S.C. § 1738, federal courts generally " 'must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.' " *Golino v. City of New Haven*, 950 F.2d 864, 869 (2d Cir.1991) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984)), *cert. denied*, —— U.S. ——, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992). This adversary proceeding entails an exception to the applicability of § 1738 in that arbitration proceedings are not "judicial proceedings" within the meaning of the statute. In *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), the Supreme Court held that federal common law principles would govern the res judicata effects of arbitration proceedings in federal courts and left it to the lower courts to formulate them. The Second Circuit has subsequently held that generally it is appropriate to give issue preclusive effects to issues within an arbitrator's expertise, but has left open what claim preclusive effects should be given to arbitration awards. *See Blumenthal v. Merrill Lynch*, 910 F.2d 1049, 1055–56 (2d Cir.1990); *Benjamin v. Traffic Executive Ass'n E. R.R.*, 869 F.2d 107, 113–14 (2d Cir.1989). Before considering whether federal common law permits giving claim preclusive effect to the arbitration award here, the court will

first determine to what extent under Connecticut law the arbitration award precludes litigation of the lien waiver because if Guiel's res judicata defense fails under Connecticut law there will be no need to reach the second question. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 383, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985) (considering state-law claim preclusion effect first in order to avoid if possible deciding whether federal courts also should bar claim).

**3.** Connecticut courts have used different terminology to express claim preclusion, stating in some cases that the original "claim" precludes litigation of any "matters" relating to the claim, and in other cases that the original "cause of action" precludes litigation of "claims" relating to the cause of action. The general principle, though, is that "a party should not be able to relitigate a matter which it already has had an opportunity to litigate." *In re Juvenile Appeal (83–DE)*, 190 Conn. 310, 318, 460 A.2d 1277 (1983).

**4.** The Second Restatement's transactional test provides:

(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim ..., the claim extinguished includes all rights of the plaintiff against the defendant with re-

plication of the test that the plaintiffs' lien waiver claim should be grouped with the claim for damages under the agreement such that the plaintiffs, having failed to raise the lien waiver claim earlier, are barred from doing so now. Guiel's application of the test does not, however, consider the test's statement that it be construed pragmatically by taking into account such factors as what groups of matters form a "convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations." *See* note 4, *supra.*

■ The claim preclusive effects of arbitration proceedings are determined not only by transactional groupings, but also by the preliminary question of which matters the parties intended to submit to arbitration. *See Restatement (Second of Judgments § 84* cmt. d, f (question of claim preclusive effect of arbitration award can be framed in terms of the jurisdictional authority of the arbitrator or in terms of the scope of the claim resolved in arbitration). Connecticut courts follow the general rule that the preclusive effects of arbitration proceedings are limited only to the claims submitted for determination. *See Avco–Lycoming,* 163 Conn. at 319, 307 A.2d 155 (An arbitration " 'award … valid on its face … has the force of a judgment, and therefore becomes *res judicata* as to all matters embraced in the submission … between the parties.' ") (quoting *Campbell v. Campbell,* 44 App.D.C. 142 (1915), *cert. denied,* 242 U.S. 642, 37 S.Ct. 114, 61 L.Ed. 542 (1916); *cf. American Brass Co. v. Torrington Brass Workers' Union,* 141 Conn. 514, 521, 107 A.2d 255 (1954) ("It is elementary that the charter of an arbitrator is the submission and no matter outside the submission may be included in the award."). *See also American Renaissance Lines, Inc. v. Saxis Steamship Co.,* 502 F.2d 674, 678 (2d Cir.1974) (general rule is that an arbitration award is "conclusive 'only as to those matters included in the submission as to which there

has been a hearing, and which are covered by the award' ") (quoting 5 Am.Jur.2d *Arbitration and Award* § 147)).

The parties have submitted two documents that discuss the matters submitted for arbitration: the arbitration clause of the agreement and the debtor's motion to stay the state-court foreclosure action pending arbitration.[5] The arbitration clause, Paragraph 14.1 of the agreement, states that "[a]ll claims, disputes and other matters in question arising out of, or relating to, this Agreement or the breach thereof … shall be decided by arbitration." *See* note 1, *supra.* The debtor's motion to stay provides more insight on what matters were submitted to the arbitrators. In its motion, the debtor argued:

> Thames River seeks a stay of plaintiff's action since any adjudication of the amount due Guiel on the mechanic's lien or damages due for breach of contract will necessarily raise issues subject to the arbitration.
>
> . . . .
>
> … Accordingly, if Thames River prevails in the arbitration on the issues and resultant damages, there will be no basis from which Guiel may claim a lien.

Debtor's Motion To Stay Proceedings at 2, 4.

Guiel argues that the arbitration clause indicates that the arbitration of disputes between the parties was unlimited and included all "claims relat[ing] to the agreement or the breach thereof," Guiel's Brief at 21, and that the debtor's motion to stay "[c]learly submitted to the arbitrators … Guiel's entitlement to assert its mechanic's lien." *Id.* at 12. The plaintiffs argue, on the other hand, that the clause and the motion to stay indicated that the submission to arbitration included only the question of the "breach of the Construction Agreement and monies due and owing to Guiel…." Plaintiffs' Brief at 15.

---

spect to all or any part of the transaction, or series of connecticut transaction, out of which the action arose.

(2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or

motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.
*Restatement (Second) of Judgments* § 24 (1980).

5. Both the plaintiffs and Guiel submitted these documents as exhibits to their briefs.

■ The court concludes that these documents reasonably indicate that the state-court proceedings were stayed only so that arbitration of the amount due under the agreement could take place. The arbitration clause restricts the arbitrators' authority to questions that involve interpretation of the agreement. Whether Guiel executed a lien waiver to the debtor does not require interpreting the agreement. Moreover, Guiel's argument that the Bank, who was not a party to the agreement or the arbitration proceeding, is nevertheless bound by the arbitration award and its preclusive effects is incorrect as a statement of law [6] and also indicates why it made no practical sense to submit to the arbitrators questions regarding the validity or priority of the lien. The question of damages due Guiel under the agreement involved only the debtor and Guiel as parties. The question of the validity of Guiel's mechanic's lien and its priority against other lienholders obviously involves the Bank and the other defendants in the foreclosure action. Thus, it made sense in the state-court foreclosure action to arbitrate the amount due under the agreement and then to continue the foreclosure action to determine Guiel's right to enforce its arbitration award through foreclosure.

Under this scenario, the validity of the mechanic's lien was not a matter within the scope of the submission to the arbitrators. Guiel's argument that application of the transactional test groups the matter of the lien waiver within the claim submitted to arbitration does not, therefore, "conform to the parties' expectations" or "form a convenient trial unit." Consequently, Guiel's res judicata defense fails because as a matter of Connecticut law the arbitration award does not preclude litigation over the validity or priority of Guiel's mechanic's lien.

### B.

■ The plaintiffs have cross-moved for summary judgment, contending that no genuine dispute of material fact exists that Guiel executed the lien waiver or that Guiel commenced work on the project after the Bank recorded its mortgage. The plaintiffs argue that they are entitled to judgment as a matter of law because Guiel's mechanic's lien is invalid or, in the alternative, because the Bank's mortgage is prior to Guiel's lien. The plaintiffs assert that the lien waiver was validly executed by Guiel, and they submitted an affidavit from a handwriting expert stating that the signature on the waiver is that of William Guiel, president of Guiel (William). Guiel, on the other hand, submitted William's affidavit in which he denied executing the waiver. The plaintiffs also contend that Guiel did not commence work on the project until after the Bank recorded its mortgage on December 22, 1987, submitting William's deposition in which he makes a statement to that effect. William's affidavit, however, asserts that work was commenced on or before November 30, 1987. Since a genuine dispute of fact exists on the plaintiff's grounds for its cross-motion for summary judgment, the plaintiffs' cross-motion must be denied.

### IV.

### CONCLUSION

For the foregoing reasons, the court denies Guiel's motion and the plaintiffs' cross-motion for summary judgment. It is

SO ORDERED.

---

**6.** As the only two parties to the arbitration agreement, only the debtor and Guiel are bound by the arbitration award and its preclusive effects. *See, e.g., Restatement (Second) of Judgments* § 34(3) ("A person who is not a party to an action is not bound by or entitled to the benefits of the rules of res judicata...."); *Avco–Lycoming,* 163 Conn. at 319–20, 307 A.2d 155 (discussing the requirement of identity of parties for res judicata to apply to an arbitration proceeding).