[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ONMOTION FOR SUMMARY JUDGMENT
The plaintiff Mid-States Investment Corporation has filed this action in three counts against the defendants Bogash Insurance Agency, Inc. and Thomas Gregorius alleging that the defendants, through whom casualty insurance was purchased for a building owned by the plaintiff, 1) breached their contract with the plaintiff, 2) engaged in unfair trade practices, and 3) defamed the plaintiff. The defendants have filed a motion for summary judgment claiming they are entitled to judgment as a matter of law because, among other things, the plaintiff's claims are barred by the statute of limitations and the doctrine of res judicata. The court agrees. CT Page 5859
This is not the first lawsuit brought by the plaintiff against these defendants for actions surrounding the same casualty insurance policy. Therefore a review of the procedural history is in order.
The defendant Thomas Gregorius is an employee of the defendant Bogash Insurance Agency. He had previously arranged for placement of a casualty insurance policy through the Bogash Agency on a building at 1354-1360 East Main Street, Bridgeport, which was then owned by Juan Sanchez. The actual insurers were a group of companies represented by Joseph Distal Company, a broker for this type of insurance coverage. At some point in August of 1985, an endorsement was issued to Mid-States Investment Corp. which had acquired title to the property. The change in the insured was requested by Nathaniel Plotkin, president of Mid-States.
In November of 1985, a fire destroyed the building. The Bridgeport Fire Department Arson Squad began an investigation. As part of the investigation, two Arson Squad inspectors, David Rentz and Andrew Fardy, attempted to contact the president of Mid-States Investment Corp., Nathaniel Plotkin, by going to his office. When Mr. Plotkin was not forthcoming with information about the building's insurance coverage, the inspectors tracked down the correct insurance agency and went to the Bogash office on November 11, 1985, and spoke with Mr. Gregorius. They told him that the fire was arson and that they were suspicious that Mid-States Investment Corporation may have been involved. They told him that they had been unable to speak with the carriers' insurance broker, and they requested a delay in or a denial of settlement of the claim. In the presence of the inspectors, the defendant Gregorius telephoned Joseph Distal Company and communicated this information to its president Richard Distal. Gregorius followed this up on the same day with a letter to Joseph Distal Co. containing the same information, and sent a copy of the letter to the Arson Squad.
The plaintiff made a timely claim under the casualty insurance policy. Rather than pay the claim, the insurers through their adjuster Robert A. Keefe contacted the plaintiff through its adjuster John Cotter and denied liability for the loss by a letter dated January 23, 1986. The Keefe letter cites the following grounds for denial of the claim:
"1. Material misrepresentations as to the CT Page 5860 occupancy of the building were made by the policyholders at the time of the application for insurance.
 2. Cause and origin of the fire which damaged the property in question have not yet been clearly determined."
The plaintiff first brought suit against the carriers for failure to pay, and thereafter, by return date of September 1, 1987, the plaintiff commenced suit against these defendants. The plaintiff recited in its allegations against Bogash and Gregorius that the failure of the carriers to pay was because "the policies were not in full force and effect, or were otherwise not valid, or that there was no insurance coverage for this fire," and that this was as a result of a breach of contract or negligence on the part of these defendants. That lawsuit terminated in summary judgment for the defendants in October of 1990, when the court (Thim, J.) concluded that there was in fact a valid policy of insurance coverage that had been issued through the defendants, so that the defendants were entitled to judgment as a matter of law.
Meanwhile the lawsuit against the carriers continued and as part of the discovery in that case, the plaintiff came into possession of a copy of the letter written by Gregorius to Joseph Distal Company.[1] Armed with the Gregorius letter, the plaintiff filed the instant lawsuit against the defendants Bogash and Gregorius claiming breach of contract, unfair trade practices, and defamation.
The defendants claim that this lawsuit is barred by the statute of limitations, the doctrine of res judicata, and, as to the defamation count, by the doctrine of conditional privilege or, alternatively, the objective truthfulness of the statements.
Res Judicata
The court is persuaded that no genuine issue of material fact exists as to the first two counts and that the defendants are entitled to judgment based on the doctrine of res judicata. "A former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action on the same claim. A judgment is final not only as to every matter which was offered to sustain the claim, but also as to any other admissible matter which might have been offered for that purpose." Cromwell v. County of Sac, CT Page 586195 U.S. 351, 352-53 (1876), cited in In re Juvenile Appeal (83-DE),190 Conn. 310, 313 (1983).
It is clear that a summary judgment is a judgment on the merits. The question to be answered is whether the scope of Mid-States' original claim encompassed the matters sought to be litigated in this second action. Our courts have adopted the "transactional test" in making this determination:
 The Restatement (Second), Judgments provides, in [sec.] 24, that "the claim [that is] extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. What factual grouping constitutes a `transaction', and what groupings constitute a `series' are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." In amplification of this definition of "original claim," 25 of the Restatement (Second) states that "[t]he rule of 24 applies to extinguish a claim by the plaintiff against the defendant even though the plaintiff is prepared in the second action (1) [t]o present evidence or grounds or theories of the case not presented in the first action, or (2) [t]o seek remedies or forms of relief not demanded in the first action."
Duhaime v. American Reserve Life Insurance Co., 200 Conn. 360, 363
(1986).
When viewed according to this standard, the plaintiff's claims, though not identical in the two actions, are similar enough that the judgment in the original action ought to be given preclusive effect. The crux of the plaintiff's aggrievement in the two actions is that, because of some action by the defendants, the carriers failed to pay for the fire damage under the policy the CT Page 5862 plaintiff thought was in force. Moreover, at the time the plaintiff filed the first action, the plaintiff knew that there were two reasons stated for the denial of liability by the carriers: a question of misrepresentation on the application, and a question about the origin and cause of the fire. In filing the original action after learning of the reasons for the carriers' denial of coverage, the plaintiff sued for breach of contract and for negligence to recover damages "if said policies were not in full force and effect, or were otherwise not valid, or if there is no insurance coverage for the . . . fire loss. . . ." Complaint in the original action, para. 5. The operative set of facts upon which the plaintiff relied in making the original claim was that as a result of the actions of the defendants, there was a refusal by the carriers to pay under the casualty insurance policy. That is the same operative set of facts in this second action.
The plaintiff argues that the discovery of the letter from Gregorius to Distal constitutes new evidence of yet another way in which the defendants participated in causing the denial of coverage on the part of the carriers, evidence that was previously undiscovered or undiscoverable. The fact of the matter' is, however, that the plaintiff never seems to have concentrated on the second reason given by the carriers for denial of coverage — cause and origin of the fire — either in conducting discovery or in evaluating the statements and documents already in plaintiff's possession. See footnote 1, supra.
The transactional test of the Restatement provides a standard by which to measure the preclusive effect of a prior judgment, which includes "any claims relating to the cause of action which were actually made or might have been made." Corey v. Avco-LycomingDivision, 163 Conn. 309, 317 (1972); Gagne v. Norton, 189 Conn. 29,32 (1983). What is controlling is that group of facts which is claimed to have brought about an unlawful injury to the plaintiff.Bridgeport Hydraulic Co. v. Pearson, 139 Conn. 186, 197,91 A.2d 778 (1952).
"Even though a single group of facts may give rise to rights for several different kinds of relief, it is still a single cause of action." Id. Furthermore the plaintiff must utilize the opportunity he has in bringing the action to resolve the entire cause, since "ordinarily a plaintiff cannot split his cause of action. He cannot sue for part of his claim in one action and then sue for the balance in another action." Gagne v. Norton,189 Conn. 29, 32 (1983), citing Viall v. Lionel Mfg. Co., 90 Conn. 694, CT Page 5863 699 (1916). The plaintiff cannot, on the basis of a document of which it may have been formerly unaware, develop new theories of liability against the defendants once the original set of theories has been adjudicated. Duhaime v. American Reserve Life Ins. Co., supra.
Statute of Limitations
The claim of defamation in the third count of the plaintiff's complaint presents a slightly different fact pattern. Here the claim is not one for damages arising out of the failure of the carriers to pay under the casualty insurance policy. Rather the claim is that the defendants committed a tortious act that resulted in injury of a completely different kind than that claimed in the first two counts. In addition to the claim of res judicata as to this count and the first two counts as well, the defendants have raised the defense of the statute of limitations. They claim that Conn. Gen. Stat. Sec. 52-597[2] bars the plaintiff's cause of action in the third count for defamation; that 42-110 (g)[3] bars the second count for violation of Conn. Gen. Stat. Sec. 42-110 et seq. (CUTPA), and that 52-581[4] bars the first count for action on an oral contract.
The plaintiff claims that the defendants fraudulently concealed the existence of the Gregorius letter, which tolls the running of the time under the statutes, and that because the issue of fraud involves a question of intent, the issue cannot properly be decided on a motion for summary judgment. While this is true as a general proposition, see United Oil Company v. UrbanRedevelopment Commission, 158 Conn. 364, 376 (1969), the question of concealment does not appear from the supporting papers of either party to be a material fact in issue. There is no evidence of any kind that the defendants concealed the existence of a cause of action from the plaintiff, or even any evidence that they concealed the Gregorius letter from the plaintiff, much less concealed it with any fraudulent intent. The plaintiff never specifically inquired of the defendants whether they had participated in any communications with Distal or with anyone else about the cause of the fire, even though the plaintiff knew that the carriers were denying coverage because of the fire's suspicious origin.[5] Nor, of course did the defendants announce to the plaintiff that they had sent a potentially defamatory statement to the carriers' agent.[6] While the question of whether silence alone can amount to concealment under Conn. Gen. Stat. Sec. 52-595 has not yet been answered by our Supreme Court, see Fichera v. Mine HillCT Page 5864Corporation, 207 Conn. 204 215 (1988); Connell v. Colwell,214 Conn. 242, 250-51, n. 6 (1990), it is the case here that there is a dearth of any facts from which one could infer a concealment or an intent to conceal the existence of the cause of action on the part of the defendants.
In Connell v. Colwell, supra, for example, a physician was sued, after the statute of limitations had run, by the administratrix of the estate of the deceased patient of the doctor. When the cancer of the plaintiff's decedent was discovered by a specialist, the plaintiff made certain inquiries to the defendant, the former physician of the deceased, about previous findings in the defendant's medical records of the decedent. The defendant stated that there were no findings in the medical records which were of significance. The plaintiff, upon later obtaining the records, determined that there were findings from which a physician could conclude that an earlier referral to a specialist would have been prudent, and sued the former physician. The plaintiff claimed that her conversation with the defendant in which she was told that there was nothing significant in the medical record contained a misrepresentation and that, viewed in a light most favorable to her for purposes of summary judgment, the statement gave rise to a genuine triable issue of whether this amounted to fraudulent concealment of the cause of action. The Court disagreed. Even if there had been a misrepresentation of the contents of the medical record,
 there was no evidence submitted to the trial court from which it could be inferred that the defendant misrepresented those facts with the intent necessary to constitute fraudulent concealment. The actions of the defendant must be "directed to the very point of obtaining the delay of which he afterward seeks to take advantage by pleading the statute." Lippitt v. Ashley, 89 Conn. 451, 480 (1915).
Connell v. Colwell, supra, at 251.
The instant case lacks, unlike Connell, any evidence of an affirmative action or statement, much less a misrepresentation, by the defendants to the plaintiff. Fraud cannot be presumed, but must be strictly proven by the plaintiff by clear, precise, and unequivocal evidence, Puro v. Henry, 188 Conn. 301, 308 (1982). Because there is no evidence of fraudulent concealment, the statute of limitation is not tolled for the initiation of suit for CT Page 5865 defamation, nor for the actions in the first two counts.
Decision and Order
The doctrine of res judicata and the statutes of limitations bar the plaintiff's action. The defendants are entitled to judgment as a matter of law, and their Motion for Summary Judgment is granted.
PATTY JENKINS PITTMAN, JUDGE