IN RE JOHN B.*
(6772)

DUPONT, C. J., O'CONNELL and LAVERY, Js.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 2026, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued December 7, 1989—decision released February 27, 1990

*Sara R. Martin,* for the appellant (respondent mother).

*Judith Merrill Earl,* assistant attorney general, with whom, on the brief, was *Clarine Nardi Riddle,* attorney general, for the appellee (state).

LAVERY, J. This is an appeal by the respondent mother, Dolores B.,[1] (respondent) from the granting of a petition to terminate her parental rights with respect to her son, John B., pursuant to General Statutes § 17-43a. The respondent's sole claim is that the trial court erred in considering evidence antedating a prior termination proceeding because the admission of such evidence was barred under the doctrines of res judicata or collateral estoppel. We find no error.[2]

---

[1] The respondent father, John B., Sr., did not appeal from the termination of his parental rights. We mention him only as it relates to the respondent mother's case, and refer to her herein as the respondent.

[2] We note that the memorandum of decision of the trial court, *Barnett, J.,* was particularly well reasoned and articulate.

The following facts are relevant. John B. was born on May 25, 1983. At birth, the child was mildly retarded and had fetal alcohol syndrome and chronic asthma. One of his legs was shorter than the other. After extended hospital care, the child was placed in a foster home pursuant to a court order dated August 10, 1983. Since then, the child has lived in foster homes; he has never lived with his parents. On November 1, 1983, the child was found uncared for and was committed to the department of children and youth services (DCYS); his commitment continues to the present day.

John B. has special mental and physical needs and attends special nursery classes and receives outpatient treatment at Newington Children's Hospital. The child's father is severely alcoholic and has a history of physically abusing the respondent mother; the respondent is severely mentally ill. A prior petition was brought by DCYS for termination of parental rights and on October 9, 1985, the trial court, *Clark, J.*, denied the termination petition in a docket entry that read "burden of state's case, clear and convincing evidence, has not been met." No more detailed memorandum was issued.

On November 28, 1986, DCYS filed the present petition to terminate the father's and the respondent's parental rights. The three grounds in this petition were the same as the allegations in the prior petition.[3] The trial court admitted evidence antedating the prior decision and took judicial notice of the file of the prior termination proceeding. That file included, inter alia, the service agreements between the parents and DCYS, as well as various reports on the nature of the child's relationship with his parents. The trial court found that after the prior decision the child had remained in the

---

[3] A fourth ground in the first termination petition, "acts of parental commission or omission," was not alleged in the new termination petition.

custody of DCYS and that DCYS had entered into a new service agreement with both parents. Under the agreement, each parent was to visit separately with the child every other week at the DCYS office. In addition, each parent was to participate in counseling, either separately or together.

Immediately thereafter, the parents breached their responsibilities under the agreement. Although each parent received bus passes, neither adhered to his or her visitation schedule. The respondent made two out of thirteen possible visits, both of which were for one hour and were noted by DCYS personnel to be deficient in quality. The father made one visit of five minutes duration. Neither parent entered counseling or therapy programs designed to enable them to assume parental control. The father testified that neither he nor the respondent was able to care for the child, and the respondent told DCYS that she was willing to have her rights terminated provided that the child was placed in the custody of a relative so that she could keep in touch with him. During the child's commitment to DCYS, the respondent had been irregularly attending treatment plan and education conferences conducted by DCYS. The parents have sent the child no gifts or cards since October, 1985. In 1986, the respondent was expelled from vocational school a second time for disruptive behavior.

In June, 1986, the Probate Court committed the respondent to Connecticut Valley Hospital (CVH), a mental care institution. On August 26, 1986, the respondent left CVH without permission. She returned to CVH on November 16, 1986, where she remained until the new petition was filed. When DCYS inquired about whether the child should visit the respondent at CVH, the staff recommended against visitation because

it would not be beneficial for either the child or the respondent. The staff prognosis for the respondent was poor.

A threshold question at the second termination hearing was whether evidence antedating the prior decision of October 9, 1985, was admissible. In its memorandum of decision, the trial court ruled that "[a] decision to grant or deny a termination petition must be made on the basis of conditions existing at the time of trial. Acts or events occuring before the denial of the earlier petition should be considered if they have continued or have been repeated or if, when coupled with new acts, they present a change of circumstances." (Citation omitted.) We agree.

The doctrines of res judicata and collateral estoppel are well established in our law. The two doctrines "protect the finality of judicial determinations, conserve the time of the court, and prevent wasteful relitigation. Res judicata or claim preclusion prevents a litigant from reasserting a claim that has already been decided on the merits. Collateral estoppel, or issue preclusion, prevents a party from relitigating an issue that has been determined in a prior suit." *Virgo* v. *Lyons,* 209 Conn. 497, 501, 551 A.2d 1243 (1988).

Our Supreme Court has recently examined the application of these doctrines to termination of parental rights hearings. In *In re Juvenile Appeal (83-DE),* 190 Conn. 310, 460 A.2d 1277 (1983), the court held that the doctrines of res judicata and collateral estoppel did not apply because the first termination case was dismissed by a trial court not on the merits, but rather because the one year requirement of General Statutes § 17-43a should not have been waived. The court went on to state, in dictum, that "[a]lthough we have resolved the two issues expressly raised by the respondent in her brief, we are concerned with problems which may

arise from successive petitions for termination of parental rights. The judicial doctrines of res judicata and collateral estoppel are based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate." Id., 318. "The doctrines of preclusion, however, should be flexible and must give way when their mechanical application would frustrate other social policies based on values equally or more important than the convenience afforded by finality in legal controversies." Id.

Courts, when deciding whether to terminate parental rights, must base their decision on an assessment of the conditions as they appear at the time of trial. Id. The doctrines of res judicata and collateral estoppel, therefore, ordinarily afford very little protection to a parent who has once successfully resisted an attempt to terminate his or her parental rights. Id. "Parents have a constitutionally protected right to raise and care for their own children. *Stanley* v. *Illinois,* 405 U.S. 645, 651, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972). This right is not free from intervention by the state, however, when the continuing parens patriae interest of the state in the well being of children is deemed by law to supersede parental interests. See General Statutes §§ 17-43a, 46b-129 (e); *In re Juvenile Appeal (83-BC),* 189 Conn. 66, 77, 454 A.2d 1262 (1983)." *In re Juvenile Appeal (83-DE),* supra, 318–19. A court's decision that a ground for termination did not exist at one time does not preclude such ground from arising at a later time.

Unlike the court that decided *In re Juvenile Appeal (83-DE),* supra, we are confronted with an issue that that court did not need to reach. We must decide whether, in a new termination hearing, to bar evidence that was admitted or available for introduction at a prior termination hearing, involving the same parties, that was decided on the merits in the parents' favor.

Apart from the dictum in *In re Juvenile Appeal (83-DE)*, supra, no reported Connecticut case has addressed this issue.

A review of relevant cases from other jurisdictions reveals that the majority of jurisdictions has adopted the rule set forth in *Matter of Newman*, 49 Or. App. 221, 619 P.2d 901 (1980), a case cited in *In re Juvenile Appeal (83-DE)*, supra. In *Newman*, after the first termination proceeding against the father was dismissed, it was subsequently discovered that the father had been sentenced to ten years in prison in another state after the hearing, but before the decision. The issue in the second proceeding was whether res judicata or collateral estoppel barred the introduction of any evidence or records of the first proceeding in the second proceeding.

The Oregon court held that "[t]ermination of parental rights proceedings generally arise out of a continuing and cumulative set of circumstances, in which the child is within the juvenile court's jurisdiction and, often, is subject to agency custody or supervision. An order denying a petition to terminate parental rights seldom leads directly to the termination of wardship or of agency involvement. It is one thing to say that such an order bars a second termination proceeding when there has been no change in the operative facts which led to the initiation of the first proceeding; it is very different—and clearly wrong—to contend that, if new substantial material facts come into existence which justify the filing of a new termination proceeding, evidence and facts which were or could have been considered in the earlier proceeding cannot be considered or reconsidered in the later one. . . . We therefore conclude that, when a second termination proceeding is not itself barred, the proof is not limited by res judicata or collateral estoppel principles to facts

or evidence which was not considered in, or which came into being after, the first proceeding." *Matter of Newman,* supra, 227–28; see also *People in Interest of J.R.,* 711 P.2d 701 (Colo. App. 1985); *In re A.S.,* 12 Kan. App. 594, 752 P.2d 705 (1988); *Scott* v. *Department of Social Services,* 76 Md. App. 357, 545 A.2d 81 (1988); *In re Interest of V. B. & Z.B.,* 220 Neb. 369, 370 N.W.2d 119 (1985).

In the present case, as in *Matter of Newman,* supra, new facts that justified the bringing of a second termination proceeding came into being after the dismissal of the first proceeding. The failure of the respondent to adhere to the visitation schedule, to get treatment for her mental health condition and to stay in contact with the child, and her poor prognosis for recovery from her mental health problems are some of the substantial facts that justified the bringing of a new petition. Once the bringing of a second termination proceeding was so justified, the doctrines of res judicata and collateral estoppel do not apply because courts are required in all termination proceedings to take into account the entire relationship between the parent and child. See *In re Juvenile Appeal (83-DE),* supra, 318. The trial court was correct in considering evidence of events that occurred prior to the first hearing.

There is no error.

In this opinion the other judges concurred.