[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this action the petitioner Jack Mancuso appeals a decision of the probate court for the district of Wallingford denying his claim for paternity and dismissing his petition for blood and HLA testing relating to his claim of paternity to the child Elyse Dorsey. The petitioner seeks paternity pursuant to Connecticut General Statutes 46b-172a and moves for blood grouping and HLA testing pursuant to C.G.S. 46b-168 of the child Elyse Dorsey, the mother, Kim Dorsey, Frederick Dorsey, the petitioner.
The parties to the action are Kim Dorsey, the mother of the child, Frederick Dorsey, the father of the child, the child through her guardian ad litem, Attorney Frederick Monahan, Jr., and the petitioner Jack Mancuso who seeks to be found to be the father of the child Elyse Dorsey.
The factual background for these claims was gleaned from a stipulation of the parties and a hearing at which evidence was presented by the parties and testimony was heard from Kim Dorsey, Fred Dorsey and Jack Mancuso. Kim and Fred Dorsey were married CT Page 67 for the first time in June of 1974. The Dorseys separated in April of 1985 and were divorced in October of 1985 (Plaintiff's Exh. 3). Petitioner became involved in an extra-marital relationship with Kim Dorsey in 1982 and lived with Kim Dorsey from June of 1985 through December of 1987. Kim and Fred Dorsey became socially reconciled in 1986 and romantically from July of 1976 forward in time. Kim Dorsey left the residence she shared with Jack Mancuso in December of 1986 and commenced residing with Fred Dorsey in January of 1987.
The child Elyse Dorsey was born on April 26, 1987. Fred Dorsey is listed as the father on the birth certificate (JT Exh 1) and visited the hospital and represented himself at all times as the father of the child Elyse Dorsey. Fred Dorsey acknowledged paternity of Elyse Dorsey in the Wallingford Probate Court (Pl. Exh. 5).
The mother Kim Dorsey in preparation for the birth of her first child participated in LaMaze classes on eight occasions. The petitioner accompanied her on one occasion and Fred Dorsey accompanied her on the other seven classes.
In the period in which Kim Dorsey had a social and romantic relationship with the petitioner Jack Mancuso they also developed a business relationship concerning the construction of a residence in Enfield, Connecticut. The house was constructed during the period from May of 1987 to October of 1987. The petitioner was conveyed the interest of Kim Dorsey in the property in October of 1988.
The petitioner saw the child Elyse Dorsey on a number of occasions during the period from April of 1987 through December of 1987. He has not seen the child since December of 1987.
The petitioner claims that he always believed he was the father of the child Elyse Dorsey and was not told otherwise by Kim Dorsey until June 25, 1989 when she advised him that he was not the father. The petitioner claims he did not see a copy of the birth certificate until September of 1988 which indicated that Fred Dorsey was listed at the father from the date of the child's birth. Petitioner did not take any action to establish visitation or paternity rights until November of 1988 (Exh. D). Kim Dorsey states that the petitioner did not claim paternity until October of 1988 in connection with a business dispute between them. The petitioner did not file his petition for paternity until February of 1989 at which time the petition was filed in the Wallingford probate court.
Mr. Mancuso indicated that he is not seeking custody of the child in this action only the confirmation of his paternity CT Page 68 and indicated two reasons for his desire to be found to be the father. The first reason related to the need of the child to know her medical history. The second reason related to his desire to share his philosophy with the child. His philosophy was one that was less concerned with the image of legitimacy and appearance, but more with the reality that Elyse was his daughter.
The petitioner has two other children one born out of his legal union with a former spouse and a second child being born subsequent to his divorce from his former spouse.
Kim Dorsey and Fred Dorsey had a male child born to them in October of 1988 and were married a second time in November of 1988.
The petitioner at no time made any support payments on behalf of the child Elyse Dorsey.
The court finds factually that both petitioner and Fred Dorsey had intimate sexual relations with Kim Dorsey, the mother of the child Elyse Dorsey during the period in which the child was conceived.
Fred Dorsey has represented himself as the father of Elyse Dorsey since her birth and has played an active role as her father in providing for her needs in all respects.
The court finds it is a fact that the petitioner Jack Mancuso knew from the date of Elyse Dorsey's birth that Kim and Fred Dorsey believed that Fred Dorsey was the father of the child and were representing at all times that Fred Dorsey was the father of the child. The court finds that the child was never represented to be the child of the petitioner Jack Mancuso. The child believes Fred Dorsey is her father and enjoys a traditional family life in a comfortable home owned by Kim and Fred Dorsey. Fred Dorsey has legitimized the child Elyse Dorsey by marrying Kim Dorsey and acknowledging paternity in the probate court.
It is obviously the position of Kim Dorsey and Fred Dorsey that their relationship to the child should not be disturbed by this petition or any testing relating to this petition.
The guardian ad litem for the child strongly urges that the petition be dismissed in the test interest of the child Elyse Dorsey. The guardian asserts that disruption in the close parent-child relationship between Elyse Dorsey and Fred Dorsey by the entertainment of this petition, the loss of legitimate status, and the influence of the petitioner would all be contrary to the best interest of the child Elyse Dorsey. CT Page 69
Kim and Fred Dorsey join with the guardian ad litem for the child in asserting an additional defense to this petition of the doctrine of equitable estoppel.
The doctrine of equitable estoppel in paternity actions had not apparently been addressed by a Connecticut court on a prior occasion. However, there are decisions from other jurisdictions which apply this doctrine in similar cases. See Ettore I. v. Angela D. 127 App.Div.2d 6, 513 N.Y.S. (1987) and McDaniels v. Carlsorl, 108 N.W.2d 299, 738 P.2d 254 (1987).
The doctrine recognizes that the interest of the innocent child and her legal rights and status as well as the rights of other persons who have developed strong bonds with the child during a period of inaction by the petitioning parent are entitled to protection. In Etorre the New York Court of Appeals found it the duty of the court "to zealously safeguard the welfare, stability and best interests of the child by rejecting untimely challenges affecting his or her legitimacy,"127 A.D.2d at 13.
In the instant case the petitioner did not formally assert any paternity rights until November of 1988 when the child was more than one and one-half years of age. The petitioner's action in the probate court was not initiated until February of 1989 when the child was 22 months of age. The petitioner though being aware of the child's whereabouts essentially during the entire period of her life had only intermittent contact with the child for the first eight months of her life and no contact on a day-to-day basis. Fred Dorsey has held himself out as the father of the child to his family, friends, the community and has developed an intimate, close relationship with the child based on daily contact. The child perceives Fred Dorsey as her father, refers to him as her "daddy", and has known no other father and has no relationship with the petitioner.
The child has developed relationships because of the failure of the petitioner to act and enjoys familial relationships with a sibling, with grandparents as well as with Fred Dorsey, which are based on her status as a child of Fred Dorsey.
In contravention to the parental role earned by Fred Dorsey by the financial support and emotional support of the child and the rights and status of the child's legitimacy; the petitioner offers only his desire to assert his status as the biological father of the child. The issue concerning her medical interests is undercut by Mr. Mancuso's expressed willingness to provide his medical history if requested on behalf of the child. The child and the state's interest in support of the child are not CT Page 70 advanced by this petition. Kim and Fred Dorsey have provided for the financial and physical needs of the child and the petitioner has totally failed to do so and has not indicated that he is seeking custody or financial responsibility for the child.
It must be noted that what is at issue is not established parental rights which are unquestionably protected by our state and federal constitutions, Stanley v. Illinois, 405 U.S. 645,646, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), In re John B.,20 Conn. App. 725, 730 (1990).
"Parental rights do not spring full-blown from the biological connection between parent and child. They require relationships more enduring." Caban v. Mohammed, 441 U.S. 380,397 (1979); Lehr v. Robertson, 463 U.S. 248, 260 (1982).
Courts have long recognized a linkage between parental duty and parental rights, Prince v. Massachusetts, 321 U.S. 158,166 (1944).
It is also critical to this court's determination that the rights of an alleged biological parent are at issue, rather than the rights of a child born out of wedlock. The child Elyse D. is legitimate and the petitioner seeks to undermine that status, in contravention of strong vital public policies.
For the foregoing reasons, the court concludes that the petitioner is equitably estopped from pursuing this action and will not advance the petition by granting the petitioner's motions for testing.
The court will also address the issue with respect to whether the court based on the best interest of the child may dismiss a paternity action brought by a third party. The trial court has broad discretion in determining the best interests of the child, see Franklin v. Dunham, 8 Conn. App. 30, 32 (1986). The court is not obligated to obtain expert testimony in order to determine the best interests of the child. In re Teshea D.,9 Conn. App. 490 (1987). The necessity of the determination of the best interests of the child as a prerequisite for allowing a paternity action under facts similar to these in this matter, is evidenced by consideration of Connecticut General Statute46b-172a which indicates that the rights and the responsibilities of a father upon the finding of paternity are equal to those of the mother specifically including rights under Connecticut General Statute 45-43 which provides for joint guardianship and equal rights to the child. Despite the petitioner's assertion that he was not seeking custody a finding of paternity on this petition would as a matter of law impact custody. The court in determining custody is required to act in the best interest of the child. CT Page 71 Sullivan v. Bonafonte, 172 Conn. 612, 613 (1977) and Temple v. Meyer, 208 Conn. 404 (1988).
The facts of this case demonstrate that familiar relationships are perhaps no longer as stable as they once were, but hopefully we are not in a moral clime in which legitimacy and a two-parent family are viewed as trifling values to be superseded by an individual assertion of possible parental status. "The institution of marriage has played a critical role both in defining the legal entitlements of family members and in developing the decentralized structure of our democratic society. In recognition of that role, and as part of their general overarching concern for serving the best interests of children, state laws almost universally express an appropriate preference for the formal family." See Hafen, Marriage, Kinship, and Sexual Privacy, 81 Mich. L. Rev. 463, 479-481 (1983). Lehr v. Robertson,463 U.S. 248, 256-257 (1982).
The court exercises its discretion pursuant to Connecticut General Statutes 46b-168 and denies any blood grouping or HLA testing of the parties.
McWEENY, JUDGE