### IN RE BRIANNA F.*
### (AC 17073)

O'Connell, C. J., and Schaller and Sullivan, Js.

Argued March 16—officially released November 3, 1998

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Sharon Wicks Dornfeld*, for the appellant (petitioner).

*Raymond C. Lubus*, for the appellee (respondent mother).

*Carolyn Signorelli*, assistant attorney general, for the department of children and families.

*Opinion*

SCHALLER, J. The petitioner, Brianna F.,[1] appeals from the decision of the trial court on a joint motion for advice regarding the effect of the determination in a prior petition for termination of parental rights. On appeal, the petitioner claims that the trial court improperly (1) concluded that in this second termination action no collateral estoppel effect should be accorded to the previous adjudication that Brianna had been neglected and abused, and that grounds existed to terminate the parental rights of the respondent mother and (2) prevented her from relitigating in this second termination proceeding the factual bases for the adjudication in

---

[1] The petitioner in this case is the minor child, Brianna F., who is represented by her court-appointed attorney and guardian ad litem in these proceedings.

the first termination proceeding. We affirm the trial court's order.

The following facts are relevant to this appeal. The petitioner and her twin sister, A, were born on December 28, 1993, to the respondent mother. The twins were the third and fourth children of the respondent. At the time of Brianna's birth, the respondent had ended her relationship with R, the father of the twins. One month after the petitioner was born, the respondent allowed a seventeen year old man, J, who had been asked to leave his previous residence, to live with her.

On February 13, 1994, the respondent brought Brianna to the Danbury Hospital emergency room to be treated for episodes of projectile vomiting containing blood. The respondent reported that a similar condition existed when the petitioner was two weeks old. The petitioner was discharged on February 15, 1994, in good condition. On February 24, 1994, the respondent again brought the petitioner to the Danbury Hospital emergency room because she had coughed up blood that evening. She was discharged later that evening, with her condition attributed to the side effects of a thrush infection in her mouth.

On February 25, 1994, the petitioner's twin sister, A, was taken to the emergency room at Danbury Hospital because she had been vomiting and spitting up blood. A was again brought to the emergency room during the early morning of February 28, 1994, because she had spit up blood. At that time, the respondent told the examining physician that A's twin sister had been admitted previously for projectile vomiting with blood and that thrush was the suspected cause. The respondent also advised the treating physician, however, that on February 25, 1994, A had hit her chest in a fall on ice involving her car seat. Later in the day, both A and Brianna were taken to their pediatrician for a regularly

scheduled office visit. The pediatrician observed no extraordinary conditions regarding the children even after being advised by the respondent of A's February 25 injury and her emergency room visit earlier that day. The pediatrician noted in his written report that the official results of the chest X ray were still pending.

On March 2, 1994, A was admitted to Danbury Hospital by ambulance at approximately 12:45 a.m. The attending physician reported that she was critically ill upon arrival and was unresponsive to stimuli. Her specific symptoms included severe anemia, respiratory arrest, low red blood cell count, a two inch linear bruise over her liver, a distended abdomen and an enlarged liver. Possible causes of her condition included infection, chronic blood loss and severe injury caused by trauma. A was transferred to the intensive care unit at Yale-New Haven Hospital, where she later died from her injuries.

Harold Wayne Carver II, the chief state medical examiner, performed an autopsy on A, and his report revealed the following. Her liver was lacerated and there were 150 cc. of blood present in her abdomen. Carver concluded that the liver injury was caused by "punch-like force," although he stated that similar damage could be sustained by squeezing the child with considerable force. The child had sustained numerous, chronic injuries to her ribs. She had also sustained an injury to the brain tissue that resulted in severe swelling. Such an injury could have been caused by her having been violently shaken. Carver concluded that the cause of death was lack of oxygen caused by multiple blunt traumatic injuries. These were caused by one incident of vigorous, uninterrupted shaking of the child's body for more than one minute with sufficient force to fracture her ribs from front to back.

Testimony at trial revealed that several witnesses had observed J "tossing the infants in the air like little

footballs and putting a spin on them as they flew." He also handled the children in a rough manner, holding them by their sleep suits and dropping them into their crib instead of laying them down. The respondent was aware of J's treatment of her children and asked him to stop it on numerous occasions. He persisted, however, and she allowed him to remain living with her and the children.

On March 4, 1994, the commissioner of the department of children and families filed coterminous petitions alleging that Brianna was a neglected and abused child pursuant to General Statutes (Rev. to 1993) § 17a-101,[2] and seeking to terminate the parental rights of the respondent and R. The grounds alleged to support the termination of parental rights were as follows: (1) the child has been abandoned by her father in the sense that he has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child; and (2) the child has been denied by reason of act or acts of commission or omission by both mother and father, the care, guidance or control necessary for her physical, educational, moral or emotional well-being. The trial court entered orders of temporary custody on March 7, 1994. On October 12, 1994, the trial court allowed amendments to the petition to include additional allegations to substantiate the claims of abuse and neglect.

Evidence was presented over approximately fifteen days, concluding on December 7, 1994. In the adjudicatory phase of the termination proceeding, the trial court determined, in its memorandum of decision dated

---

[2] On the date the first petition was filed, General Statutes (Rev. to 1993) § 17a-101 (f) provided in relevant part: "In proceedings in the superior court under this section . . . (4) evidence that the child has been abused or has sustained a nonaccidental injury shall constitute prima facie evidence that shall be sufficient to support an adjudication that such child is uncared for or neglected. . . ." This provision was repealed in 1996.

March 8, 1995, that Brianna was a neglected and abused child as of the date of the last amendment to the petition, October 12, 1994. The trial court found by clear and convincing evidence that the respondent mother had allowed Brianna to suffer multiple serious and life threatening injuries at the hands of a live-in boyfriend during the two month period that Brianna lived with her mother, and that the mother evidenced an inability to make responsible judgments for the benefit of the child. Because of the mother's conduct, the trial court concluded that absent a complete reassessment by the mother of her priorities, Brianna would be at risk if she were returned to her mother's custody.

On November 22, 1995, the trial court issued its memorandum of decision in the dispositional phase of the proceedings. The trial court concluded that while the psychological trauma to the child associated with her physical injuries and the death of her twin sister would be substantial, the mother had presented evidence that she was in the process of addressing her personality defects that led to the child's abuse and neglect, and that in time she would be capable of providing a safe and appropriate home for her child. The trial court concluded that it could not find that the respondent mother is and will be unable to change and overcome her defects and deficiencies in judgment and perception of responsibilities within any reasonable time period in order to parent Brianna effectively. The trial court ultimately concluded that termination of the respondent's parental rights would not be in the best interest of the child at the present time and dismissed the petition. The trial court did, however, order that the child be committed to the custody of the department for a period not to exceed twelve months, based on the finding of abuse and neglect.

The petitioner filed the second termination petition, which is the subject of this appeal, on April 1, 1996,

alleging that the respondent has failed to achieve the degree of rehabilitation necessary to assume a responsible position in the petitioner's life. On August 6, 1996, the petitioner and the respondent filed a joint motion for advice seeking guidance from the trial court as to the effect of the first termination proceeding on the second termination proceeding. A hearing was held, and on February 27, 1997, the trial court rendered an oral decision on the parties' motion. The trial court concluded that the determination reached in the adjudicatory phase of the prior proceeding should not be accorded preclusive collateral estoppel effect. The trial court also stated that the adjudicatory grounds for termination alleged in the first petition could not be relitigated in the second proceeding. This appeal followed.

I

As a preliminary matter, we address the propriety of a motion for advice seeking guidance from the trial court on the issues raised in this appeal. "Motions for advice are not recognized by the statutes or rules of court in this state. Our Supreme Court, well over a century ago, voiced its strong objection to the practice of requesting advisory opinions. See *Reply of the Judges*, 33 Conn. 586 (1867). In more recent times, our Supreme Court has held that an action at law does not lie where the purpose is merely to secure advice on the law; *Connecticut Savings Bank* v. *First National Bank & Trust Co.*, 133 Conn. 403, 411, 51 A.2d 907 (1947); and that if jurisdiction is thereby lacking, neither the Supreme Court nor the trial court should deliver an advisory opinion. *Statewide Grievance Committee* v. *Rozbicki*, 211 Conn. 232, 246, 558 A.2d 986 (1989).

"In this instance, however, even though the defendant's motion was labeled a 'Motion for Advice,' the defendant was seeking clarification of a prior order of

the court. In such situations 'we look to the substance of the claim rather than the form.' *Whalen* v. *Ives*, 37 Conn. App. 7, 16, 654 A.2d 798 [cert. denied, 233 Conn. 905, 657 A.2d 645] (1995). 'Motions for interpretation or clarification, although not specifically described in the rules of practice, are commonly considered by trial courts and are procedurally proper.' *Holcombe* v. *Holcombe*, 22 Conn. App. 363, 366, 576 A.2d 1317 (1990). . . . We conclude that the trial court had jurisdiction to consider the defendant's motion." (Citations omitted.) *Zadravecz* v. *Zadravecz*, 39 Conn. App. 28, 30, 664 A.2d 303 (1995).

We note that under most circumstances the response to a motion for advice does not satisfy the appealable final judgment requirements of General Statutes §§ 52-263 and 51-197a, Practice Book § 4000, now § 61-1, and *State* v. *Curcio*, 191 Conn. 27, 30, 463 A.2d 566 (1983). In this case, however, we are satisfied that the trial court's order does qualify as an appealable final judgment under the authority of *Convalescent Center of Bloomfield, Inc.* v. *Dept. of Income Maintenance*, 208 Conn. 187, 195, 544 A.2d 604 (1988) (judgment denying claim of collateral estoppel appealable final judgment similar to criminal defendant's defense of double jeopardy because both invoke right not to go to trial on merits).

We now turn to the substance of the petitioner's claims on appeal. The petitioner first claims that the trial court improperly refused to apply the doctrine of collateral estoppel to the determination in the previous termination proceeding that Brianna had been adjudicated to be neglected and that grounds existed for the termination of the respondent's parental rights. Specifically, the petitioner claims that preclusive effect should be accorded to the previous determination that adequate grounds existed to terminate the respondent's parental rights, and that in this second termination proceeding the trial court should proceed immediately to

the dispositional phase of the proceeding to determine whether termination is in the best interest of the child. We are not persuaded.

"Collateral estoppel, or issue preclusion, is that aspect of res judicata which prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties upon a different claim. *State* v. *Aillon*, 189 Conn. 416, 424 n.8, 456 A.2d 279 (1983); *State* v. *Wilson*, 180 Conn. 481, 485, 429 A.2d 931 (1980); 1 Restatement (Second), Judgments § 27; James & Hazard, [Civil Procedure (2d Ed. 1977)] §§ 11.3 and 11.17." *In re Juvenile Appeal (83-DE)*, 190 Conn. 310, 316, 460 A.2d 1277 (1983).

"The judicial doctrines of res judicata and collateral estoppel are based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate. See *Corey* v. *Avco-Lycoming Division*, 163 Conn. 309, 316–17, 307 A.2d 155 (1972), cert. denied, 409 U.S. 1116, 93 S. Ct. 903, 34 L. Ed. 2d 699 (1973); James & Hazard, supra, § 11.2. Stability in judgments grants to parties and others the certainty in the management of their affairs which results when a controversy is finally laid to rest. The doctrines of preclusion, however, should be flexible and must give way when their mechanical application would frustrate other social policies based on values equally or more important than the convenience afforded by finality in legal controversies. See 1 Restatement (Second), Judgments § 20, comment n; § 24, comment f; § 26 (1) (f), comment i; § 28.

"Because the issue of whether termination of parental rights is appropriate must be decided upon the basis of conditions as they appear at the time of trial, the doctrines of res judicata and collateral estoppel ordi-

narily afford very little protection to a parent who has once successfully resisted an attempt to terminate his rights to a child. Parents have a constitutionally protected right to raise and care for their own children. *Stanley* v. *Illinois*, 405 U.S. 645, 651, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972). This right is not free from intervention by the state, however, when the continuing parens patriae interest of the state in the well being of children is deemed by law to supercede parental interests. See General Statutes §§ 17-43a, 46b-129 (e); *In re Juvenile Appeal (83-BC)*, 189 Conn. 66, 77, 454 A.2d 1262 (1983); *Anonymous* v. *Norton*, 168 Conn. 421, 430, 362 A.2d 532, cert. denied, 423 U.S. 935, 96 S. Ct. 294, 46 L. Ed. 2d 268 (1975)." *In re Juvenile Appeal (83-DE)*, supra, 190 Conn. 318–19.

Because the parent-child relationship is at issue, all relevant facts and family history should be considered by the trial court when deciding whether to terminate the respondent's parental rights. To proceed immediately to the dispositional phase of the termination proceeding without considering the adjudicatory issue of whether grounds exist to terminate the respondent's parental rights at the current time would not satisfy the statutory requirements, nor would it present an accurate picture of the complete parent-child relationship. To conclude otherwise would serve to discount a parent's ability to achieve personal rehabilitation. The parent-child relationship presents an ongoing dynamic that cannot be frozen in time. The entire picture of that relationship must be considered whenever the termination of parental rights is under consideration by a judicial authority. We conclude, therefore, that preclusive collateral estoppel effect should not be accorded to the previous adjudication that grounds existed by clear and convincing evidence to terminate the respondent's parental rights.

## II

The petitioner next claims that the trial court's order improperly precludes her from relitigating, in the second termination proceeding, the factual bases for the adjudication in the first termination proceeding. On the basis of our interpretation of the trial court's order and in light of the relevant Connecticut case law, we disagree.

In ruling on the parties' motion for advice, the trial court appeared to render inconsistent rulings.[3] Specifically, the trial court stated that the petitioner could not relitigate the issues of neglect and grounds for termination from the first petition in the adjudicatory phase,

[3] The following colloquy occurred:

"The Court: The court finds that legal significance attaches to the court's action in dismissing the [prior] petition. . . . What this court finds is that that case ended. There was an end to that case and that it was the court's intention that that . . . termination case end and that the neglect action was substantiated and that everyone would carry forward from there. This court finds that the facts upon which the neglect determination and adjudication issued before that case was dismissed were subsumed into the finding of neglect. The court finds that the termination controversy has been decided. The court also notes that in bringing a new petition, the petitioner has put the respondent on notice of various allegations to which the respondent has the right, under our state and federal constitutions, to be heard and defend, and to suggest that, in this new and separate legal proceeding, the respondent would not be able to defend against the alleged grounds for termination would not be appropriate. Because the court finds that that issue was previously litigated and that petition was dismissed, the court finds that the grounds originally litigated, apparently at length in the original termination proceeding, cannot be relitigated in the instant action initiated by the petitioner.

"[Petitioner's Attorney]: If I might ask the court to elaborate on your last statement—that the grounds previously litigated cannot be relitigated. . . . Is it Your Honor's ruling that the evidence, which was submitted at the first trial to support an allegation of omission and commission, might not be submitted at the subsequent trial as to omission and commission?

"The Court: Not as a new allegation. No, you can't try it again. Clearly, the facts that gave rise to both the termination finding and the neglect finding—they're there. . . . In other words, use it as a factual predicate, if you will, for a failure to rehabilitate—anything you want, but on acts and omissions, unless there are new acts and omissions, should probably not

yet also stated that the petitioner was "not barred from referring to those facts because they clearly gave rise to . . . they're already there. You're not barred from referring to those as a predicate for . . . there was a neglect adjudication. It was based on these facts." We interpret the trial court's order to mean that the petitioner could not rely on the finding of neglect and grounds for termination from the first proceeding to establish conclusively that grounds exist to terminate the respondent's parental rights in this second proceeding. The trial court's order, therefore, was designed to prevent the application of preclusive collateral estoppel on these issues. The trial court, however, did not preclude the petitioner, in a subsequent proceeding, from relying on the grounds litigated in the first proceeding.

be pled in this new proceeding. . . . I want to make this clear. You're not barred from referring to those facts because they clearly gave rise to —

"[Petitioner's Attorney]: That was my concern, Your Honor. I thought I understood Your Honor to say that they could not come in.

"The Court: They're already there. See, that's why I don't understand why you feel that you have to relitigate. They're there, but they're not the predicate, in this court's opinion . . . for a finding of—automatic finding of termination. That case is over. That act and omission count in this court's mind at least, ended. . . . You're not barred from referring to those as a predicate for, hey, there was a neglect adjudication. It was based on these facts. There has been a failure to rehabilitate or there's been no ongoing parent-child relationship since then. That would be appropriate in a termination proceeding, but to reallege those facts and say, I want another chance to reprove them or I want them accepted as proven in this new termination proceeding, this court is not allowing that.

"[Petitioner's Attorney]: I think, Your Honor, I'm having some difficulty meshing that with the cases which, essentially, go to what I think is the opposite . . . situation. . . . *In re Juvenile Appeal (83-DE)* [supra, 190 Conn. 310] and in *In re John B.*, [20 Conn. App. 725, 570 A.2d 237 (1990)] because, I think that Your Honor's ruling, essentially, puts us more into that context and those cases, as I read them, say that you can rely on those facts and—add them to the new facts.

"The Court: Well, I disagree. . . . [The previous case] was dismissed. . . . It ended, in this court's mind. The facts were heard. The court may have made an adjudication in that, but it dismissed the entire case because it felt the neglect adjudication and disposition were sufficient, so I'm saying that's off—that case—that controversy has already been determined. You know, bring a new petition, if you will or proceed on the one, but I don't feel that you can relitigate that issue in your new petition."

Our interpretation of the trial court's order is consistent with our case law on this subject. We previously decided the issue of whether evidence presented in a previous termination proceeding that was resolved on the merits in the parents' favor should be admitted in a second termination proceeding in *In re John B.*, 20 Conn. App. 725, 570 A.2d 237 (1990). We concluded in that case that once the filing of a second termination proceeding is justified based on a change of circumstances, res judicata and collateral estoppel do not apply to prevent introduction of facts that were in existence or were presented at the prior termination proceeding. Id., 732.[4] To justify this conclusion, we emphasized the importance of taking into account the entire relationship between the parent and the child. Id.

In this case, the petitioner has alleged facts that support a change of circumstances. Specifically, she has alleged that the respondent has failed to achieve sufficient rehabilitation so as to enable her to serve a responsible role in the petitioner's life. The rule enunciated in *In re John B.* is therefore applicable. Accordingly, in a subsequent termination proceeding, the petitioner may introduce, and the trial court may consider, facts and evidence that actually were introduced or could have been introduced together with the findings of the first trial court. The court may then consider all such facts, evidence and findings together with new evidence to determine if the petitioner has met her burden of proof. By that means, the trial court will "take into

---

[4] We also note that appellate courts from other jurisdictions have held similarly. See *People in Interest of J.R.*, 711 P.2d 701 (Colo. App. 1985); *Scott* v. *Dept. of Social Services*, 76 Md. App. 357, 370, 545 A.2d 81, cert. denied, 314 Md. 193, 550 A.2d 381 (1988), cert. denied, 492 U.S. 910, 109 S. Ct. 3226, 106 L. Ed. 2d 575 (1989); *In re Ballard*, 311 N.C. 708, 716, 319 S.E.2d 227 (1984); *In re Wheeler*, 87 N.C. App. 189, 193–94, 360 S.E.2d 458 (1987); *In re Stewart Children*, 82 N.C. App. 651, 654, 347 S.E.2d 495 (1986); *State ex rel. Juvenile Dept.* v. *Newman*, 49 Or. App. 221, 227–28, 619 P.2d 901 (1980), rev. denied, 290 Or. 449 (1981).

account the entire relationship between the parent and child" as it exists at the time of the applicable termination proceeding. Id., 732. To preclude consideration of the facts existing at the time of the first proceeding would not allow for a comprehensive analysis of the parent-child relationship.

We conclude, therefore, that the petitioner is not precluded from introducing the facts, evidence and findings that supported the adjudication in the first termination proceeding. The petitioner is not entitled, however, to an automatic finding that grounds now exist to support the termination of the respondent's parental rights. Accordingly, the petitioner may then litigate the existence of other facts that have arisen subsequent to the first termination proceeding and that are relevant to the termination of the respondent's parental rights.

The trial court's order on the motion for advice is affirmed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.