MEMORANDUM OF DECISION
Darlene C. was born to Beatrice C. and Darrel S. on January 1, 1994, when Beatrice was just fourteen years old and a foster child herself Darlene was removed from her mother's care before being discharged from the hospital in which she was born, as her mother was without visible means of support and homeless. Darlene was adjudicated an uncared-for child on February 17, 1994 and Committed to the care and custody of the Department of Children and Families, hereafter "DCF." Her commitment has been extended on three occasions since that time and she has been in foster care for her entire life.
A petition for termination of parental rights was filed against the parents of Darlene on February 20, 1997, alleging that the father had abandoned her and that her mother had no ongoing parent child relationship with her as defined by Connecticut General Statutes § 17a-112 (c)(3)(A) and (D). The matter was assigned for trial and "(f)ollowing a trial on the merits, the trial court, in a memorandum of decision dated January 2, 1998, determined that Darrel S. had completely abandoned the child and that Beatrice C. had no ongoing relationship with her," In re Darlene C., 247 Conn. 1, 3,___ A.2d ___ (1998). The trial court nonetheless dismissed the petition without prejudice to refile it as the trial court concluded that the preparation of the termination petitions by non-lawyer DCF social workers was the unauthorized practice of law. (Foley, J.) The Supreme court determined this to be error CT Page 14630 and reversed this portion of the decision.
On March 3, 1998, DCF again filed a termination petition, alleging that Darrel S. had abandoned the child and Beatrice had failed to achieve such degree of personal rehabilitation as would encourage the belief that, within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child. Further, DCF renewed its assertion that there was no ongoing parent-child relationship. Connecticut General Statutes § 17a-112(c)(3)(A), (B) and (D). As to the last ground, the holding of In re Valerie D., 223 Conn. 492, 613 A.2d 748 (1992) makes it clear that it cannot be sustained, as its use is improper where DCF removed the child a few days following her birth and the child has remained in foster care ever since that time. The court dismisses this ground as to Beatrice C.
The trial on the refiled termination petition commenced and concluded on November 9, 1998. The court heard from two DCF social workers as well as Beatrice C., who testified on her own behalf. There were eight exhibits including the trial court's memorandum of decision of January 2, 1998. From the evidence, the court makes the following factual findings:
1. The putative father, Darrel S. In its memorandum of decision of January 2, 1998, the court found that:
 "Darrel is the child's putative father. DCF social worker, Dan Roos, met with Darrel on January 4, 1994. Darrel was not sure whether he was the child's father or not. He was afraid he might be charged with statutory rape, as he was twenty and Beatrice was thirteen when she got pregnant. He wanted a blood test and did not offer a plan for the care of the child. He had graduated from high school, became a tractor trailer driver and was employed at the time. Beatrice says that she saw Darrel a couple of months go during 1997. She gave him the phone number of the foster mother taking care of Darlene. But Darrel has never called Darlene, has never visited her, has never sent her a card or a gift. He has completely abandoned the child."[2]
The evidence before the court fully supports the same findings. The court may consider "the findings of the first trial CT Page 14631 court." In re Brianna F., 50 Conn. App. 805, 817, ___ A.2d ___
(1998). Since the conclusion of the first trial in this matter, the situation has not changed. Darrel S. has not contacted DCF, seeking information about the child. He has not sent gifts, cards or letters nor requested visitation. Darlene herself, now age four, has no memories of her putative father, who has never been involved with her in her entire life. The court concludes, from the clear and convincing evidence, that Darrel S. has abandoned this child.
"Abandonment occurs where a parent fails to visit a child, does not display love or affection for the child, does not personally interact with the child, and demonstrates no concern for the child's welfare." In re Juvenile Appeal(Docket No. 9489), 183 Conn. 11, 14, 438 A.2d 801 (1981). There can be no doubt that the facts support this ground for termination of parental rights concerning Darrel S. and had existed for more than a year prior to the filing of the termination petition.
2. The mother, Beatrice C.
The gravamen of Beatrice's claim in this trial is that in the recent past she has grown up, matured and become responsible. Because of this, she should be given a second chance and allowed to parent her child. The memorandum of decision of January 2, 1998 found that:
 "Beatrice, herself, had been a DCF committed child, living in foster care since 1988, when she was nine years old. On April 13, 1992, when Beatrice was thirteen years of age, she ran away from her DCF home. DCF made heroic efforts to try to get young Beatrice to live in a shelter or a residential home, or to accept DCF services. Beatrice would move from one unsupervised setting to another, and she resisted all DFC efforts to stabilize her living conditions. She was between thirteen and seventeen years of age at the time.
 In her testimony during the trial, she admits she was immature, stupid and didn't want to listen. "To be honest, I really haven't did anything to get my daughter back." She admits she made choices not to go for visitation. But now that she is eighteen, she says she is willing to accept DCF help.
The court finds that due to her consistent pattern of CT Page 14632 avoidant behavior, running around, failing to accept appropriate and timely services from DCF and not visiting regularly with Darlene, Beatrice had no ongoing parent-child relationship with the child at the present time."[3]
The evidence at the second trial supports these detailed findings anew. Beatrice's years as a committed child were turbulent at best and she, according to the DCF social workers, does not have a parent-child relationship with her daughter, but one that is more like a sibling connection. Darlene only knows her foster mother as her mother and calls her biological mother by her nickname, "Nicki."
Beatrice herself testified concerning her placements, her moves and her present efforts to rehabilitate. Beatrice has had some limited success in a program called Futures in which she has been participating. She receives schooling three half days a week and also works at McDonald's. At present, she claims to live with her mother and asserts that she will get an apartment, if Darlene should be returned to her.
The DCF social worker's view of Beatrice's efforts was not so rosy, however. Ms. Davis-Mendes testified that in her opinion Beatrice had not rehabilitated. She has not been willing to accept services, in particular counseling, which she has still not received. She stated: "When Beatrice does well, she does really well." She saw Beatrice as having short spurts of doing well but not being able to sustain such efforts. She had worked with her in another capacity in 1996 and as a DCF worker in 1998 and had not observed any differences. She gave as an example of Beatrice's attitude a visitation scheduling difficulty just a week prior to trial. As the DCF worker, she had called Beatrice at 8:15 on a Monday morning and woke her up. She explained to her that she needed to be at the office Friday, by 3 P. M., to be transported in time for a visit with Darlene. She explicitly told her that DCF would not pick her up. When Beatrice did not come on Friday, but called, she stated that she knew she was late, but that DCF was supposed to pick her up. This was the second time the visit had been rescheduled and was an example of a lack of maturity on Beatrice's part.
During the time that her child has been in DCF care, Beatrice has received many services which include the Salvation Army Young Parent's Program, St. Francis Parent Aide Program, Family Community Alliance Program, which provided educational, mental CT Page 14633 health and other services to Beatrice, Kappa Program, Village for Families and Children and Futures, in which Beatrice continues to be involved and where she hopes to be able to secure her high school diploma.
The court concludes from the clear and convincing evidence, including from Beatrice's own testimony and attitudes, as reflected by that testimony, that she has not rehabilitated so that she could care for her daughter within a reasonable period of time. Connecticut General Statutes § 17a-112(c)(3)(B). Darlene was adjudicated an uncared-for child in 1994. She has been in foster care all of her life, four years in total. While it is perhaps the case that if her mother had more time and becomes a fully functioning adult, she might be able to rehabilitate at some time in the future. But for Darlene, it is too late. This child requires permanency and simply cannot wait any longer for the rehabilitation of her mother.
"`Personal rehabilitation' as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent." In re Migdalia M. 6 Conn. App. 194,203, 504 A.2d 532 (1986). See also: In re Juvenile Appeal,1 Conn. App. 463, 477, 473 A.2d 795, cert. denied, 193 Conn. 802,474 A.2d 1259 (1984). Beatrice has not begun the process to accomplish such an outcome. Rehabilitation within the foreseeable future is not likely. The court finds, based on the clear and convincing evidence, this ground had existed for substantially longer than one year prior to the filing of the termination petitions on March 3, 1998.
 REQUIRED FINDINGS
The court makes the following factual findings based upon the clear and convincing evidence required by CGS § 17a-112(e):
1) Appropriate and timely services were provided by the Department of Children and Families, including a parent aid, counseling which Beatrice would not accept, referrals to shelters, young parents' programs, transportation assistance, visitation coordination and visitation. The services offered were extensive. No services were offered to the putative father, as he was unavailable.
2) The court finds by clear and convincing evidence that DCF made reasonable efforts to reunify the family, given the CT Page 14634 situation and circumstances, as far as possible. Until recently, by her own admission, Beatrice was not really invested in having her daughter in her care. Her current participation and use of services offered also is less than optimal. Beatrice has not done her part in such reunification efforts, and only now has begun minimal steps toward what is necessary to rehabilitate herself
3) DCF set reasonable and realistic goals embodied in the court-ordered expectations in 1994 in order to reunify the family. Beatrice was, to a substantial degree, unable to benefit from the programs attended. She has rejected and refused others, including counseling, which would benefit her. No expectations were set for Darrel S. as he was never present.
4) The feelings and emotional ties of the child with respect to the parents, any guardian of the person and any person who has exercised physical care, custody and control of the children for at least one year and with whom the children have developed significant emotional ties. Darlene only knows her foster mother as her mother and "Nicki" as a friend; She is attached to her foster mother, fits in well with the family and is bonded to the two other children in the household. She has done well there and has no special needs. Her foster mother has expressed a wish to adopt her.
5) Finding regarding the age of the child. Darlene is four years old and will be five on January 1, 1999.
6) Finding regarding efforts of the parents to adjust their circumstances, conduct or conditions to make it in the best interests of the children to return them to their home in the foreseeable future and (A) the extent to which the parents have maintained contact with the children as part of an effort to reunite the children with the parents, provided that the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communications with the guardian or other custodian of the children Darrel S. has made no efforts to remain in contact with this child or to adjust his conduct Beatrice has made more efforts, but has not adjusted her conduct so that a return of the child to her is indicated.
7) Finding regarding the prevention of the parents from having a meaningful relationship etc. No inappropriate conduct is noted. DCF has taken many steps to encourage Beatrice to have a CT Page 14635 meaningful relationship with Darlene. The putative father has never been present to participate in such conduct.
 DISPOSITION
Darlene has been in the care of her foster mother since birth. As previously found, she has flourished there and is bonded to the other children in the household. Recently, DCF workers testified there have been some problems with the foster mother and her relationship with DCF, her automobile license and possible domestic disputes with a partner in the home. The difficulties with her license were clarified within the time frame that DCF itself established and none of the actions, which DCF sees as lapses in judgment, relate to her care of the child. Nonetheless, DCF is investigating the possibility of removing Darlene from this home. A team of experts, including a psychologist to evaluate the foster parent-child bond, will be meeting to assess the situation.
From the evidence before the court, the court concludes that it is in Darlene's best interests that she have permanency. Therefore, the court orders that a termination of the parental rights of Beatrice C. and Darrel S. to Darlene C. enter. The court further appoints the Commissioner of the Department of Children and Families as Darlene's statutory parent. However, consistent with the court's new role in permanency planning,[4]
the court retains jurisdiction over this matter in the event that any change in placement for Darlene is planned and orders that, should DCF plan such a course of action, a court hearing is required.
To disrupt Darlene's placement based on the testimony before the court would not be in the child's best interest. The court acknowledges that the placement determination has not yet been made and that the evidence of the present situation may well not have been fully presented, given the issues before the court. The court further acknowledges that the DCF investigation is not yet complete. Nonetheless, from the child's optic, this placement has permitted her to flourish and should not be disrupted without the strongest of reasons. If DCF makes the decision to retain this placement for Darlene, it is the court's direction that her foster mother, if she continues to be willing to adopt this child, receive first consideration. Further, a permanency plan for Darlene shall be submitted to this court within ninety days. A review plan for her shall be filed in accordance with state and CT Page 14636 federal law.
Barbara M. Quinn, Judge Child Protection Session
[2] Memorandum of Decision, page 2.
[3] Memorandum of Decision, Page 2.
[4] The Adoption and Safe Families Act, 42 U.S.C. § 620 et. seq. mandates significantly greater judicial oversight in permanency planning for children.