[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On March 19, 1998, Vincent (born June 14, 1988) and Jeremy (born June 13, 1986) were committed to the Department of Children and Families (DCF) as neglected children on the nolo contendre plea of the mother. Court Expectations of the mother were set at that time. Exhibit S-5. The children had been in DCF custody under a September 26, 1997 Order of Temporary Custody. The father is deceased.
In connection with a Permanency Plan, the court on February 25, 1999 found continuing efforts at reunifying the two boys with their mother were inappropriate.
Petitions to terminate the mother's paternal right were filed June 25, 1999, alleging three statutory grounds: abandonment, failure to achieve personal rehabilitation, and no ongoing parent-child relationship. The trial was held on May 8, 2000. The mother, a psychological evaluator and a DCF worker testified. The mother and child were represented by separate counsel. (The mother's oral request on the morning of trial for a continuance and replacement counsel was denied.)
The petition to terminate is granted.
 I.
Because of the February 25, 1999 ruling, DCF us not required to prove reasonable efforts as a pre-condition for further action on the petition. Conn. Gen. Stat. § 17a-112 (c)(2).
 II.
The present DCF worker was assigned this case on February 22, 1999. She prepared the Social Study and Addendum, based on her personal contact and access to DCF records. Exhibits S-3 and S-4
DCF first became involved with mother and sons in 1994 in connection with a probate transfer of guardianship to the boy's aunt. The nephews lived with her for about four months. The DCF case was closed in August, 1995; the children were living with their mother. In May, 1996, the mother signed a voluntary placement for about two months. DCF offered home services in May and July, 1997. While Vincent has remained in the CT Page 7236 same home since September 29, 1997, Jeremy has been in several locations.
From September 23, 1997 to May 6, 1998, the mother visited the children four times even though she was offered weekly supervised visits. Because the mother failed to show for scheduled visits, DCF terminated visitation. From May, 1998 until incarcerated in April, 1999, the mother's whereabouts were unknown to DCF and she failed to send cards, letters or gifts to her children. DCF was unaware of her incarceration in Connecticut from September to December, 1998. In April, 1999, DCF proposed visitation if requested in advance; the mother never contacted DCF. In June, 1999, the mother requested visitation. Because Vincent was having behavioral problems, DCF did not agree. In early 2000, the mother again raised the visitation issue when she participated, while incarcerated, in a treatment plan/administrative review; she failed to participate in the two prior reviews. The boys' therapist advised that contact would not be beneficial. The boys, moreover, in 2000 declined visitation or even the opportunity to write to their mother. The brothers do have weekly visits with each other. They are in therapy.
Despite the Expectation, the mother did not always advise DCF of her location. She didn't complete a parenting class offered in November, 1997 and January, 1998. She missed all three assignments for a parent aide. While she underwent an evaluation at Turning Point, she left the program after two days. She tested positive for substances at Turning Point. DCF made repeated requests for substance abuse treatment. She has not been able to maintain sobriety and recovery. She has been evicted for non-payment.
In mid 1986, the mother had contracted Lupus. Lupus produces great pain. Nevertheless, one doctor declined services because of missed appointments. Her substance abuse, in part, is designed to alleviate her pain. In April, 1999, the mother admitted Heroin use on a regular basis to counteract the Lupus pain. The other part is her twenty-year addiction to substance abuse.
In September, 1998, the mother was incarcerated for probation violation for three months based on no screening, drug treatment or reporting. On April 26, 1999, she was again arrested for violation of probation and returned to prison to be released the day after this hearing. She was unclear what counseling services she participated in at prison or what her parole conditions are, except to remain drug free . . . The prison reports she was cooperative but did not participate in counseling. Upon release, she is to enter an Alternative Incarceration Center and become actively involved in a substance abuse treatment program. The mother relies on an SSI benefit of $300.00 per month for support. CT Page 7237
The mother's past failures implicate future problems upon any reunification of this family. Her dependence on Heroin as a pain control can only decrease her ability to rehabilitate her life.
Jeremy has a bond with his mother and is concerned about her health and well-being, yet both boys have refused a recent DCF offer of maternal visitation. The boys did meet with their mother at the office of the evaluator. They support termination.
Dr. Mark E. Kaplan, a licensed clinical psychologist whose qualifications were stipulated, performed a court ordered evaluation covering three sessions from October 6, 1999 to October 18, 1999. His evaluation is part of the record. Exhibit S-2. The testimony of professionals is accorded great weight. In re Nicolina T., 9 Conn. App. 598
(1987).
In contrast to an earlier evaluation, Jeremy now believes reunification is unrealistic because of his mother's inability to take care of herself and, consequently, him. Vincent agrees. Jeremy seeks stability as a basis for long term planning. DCF has been involved in the boys' lives since 1994; they have been continuously in DCF custody since September, 1997; Jeremy in multiple placements.
The mother cannot provide stability because of her Lupus, her drug addiction and her personal limitations. The mother has some cognitive limitations and is impaired so that any prognosis for any future change is guarded. Nevertheless, the boys recognize the respondent as mother and are somewhat attached to and concerned for her. They are disappointed and remain ambivalent. While they wish to continue some relationship with her, they are leery about her ability to parent. Jeremy is pessimistic about any return to his mother who appears locked into a drug habit leading to another removal from home into the uncertainty of foster care. It is unclear who the psychological parents are. Termination, even without adoption, would clarify the legal relationship with their mother. The boys need a stable foundation now upon which to build their lives. Despite his wishes, Jeremy recently moved from his foster home of psychological parents. The brothers wish to be reunited with each other. While neither current foster home is pre-adoptive, DCF would seek to locate one adoptive home for both boys who are bright, articulate and personable. The uncertainty of the present situation, if unresolved, can only lead to continued problems as teenagers. An unstable situation could cause a significant regression for Jeremy and a significant impairment on Vincent's ability to develop close intimate relationships. They need a safe harbor.
 III.
CT Page 7238
Based on the above facts, the court makes the following adjudication based on clear and convincing proof as of the date of the petition:
Vincent and Jeremy have been abandoned by the mother in the sense that she has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of her two sons. § 17a-112
(c)(3)(A); In re John G., 56 Conn. App. 23 [56 Conn. App. 12], 35-38
(1987).
The mother of the two sons has been found by the Superior Court to have been neglected in a prior proceeding and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the children, she could assume a responsible position in the life of the children. § 17a-112 (c)(3)(B); In re Kasheema L., 56 Conn. App. 484 (2000), cert. denied 252 Conn. 945 (2000); In re Emmanuel M., 35 Conn. App. 276
(1994).
Based on the above facts, the court does not find clear and convincing proof that there is no ongoing (positive) parent-child relationship between mother and sons. § 17a-112 (c)(3)(D); In re Jessica M.,217 Conn. 459 (1991). Because the children have been out of the parents' custody for so much of their lives, the parent-child relationship must first be examined to determine whether there is any relationship and if so, whether it is positive. In re Valerie D., 223 Conn. 492 (1992). Although the higher courts have provided various explanations of this illusive basis for termination, the present relationship of sons and mothers is difficult. The boys do have an emotional attachment to their biological mother; they just do not want her as custodian of their lives. The boys present a negative evaluation of her custodial abilities. Whatever the relationship, the boys request termination of the legal relationship to the mother. The two positions, however, are not contradictory; they just address different reasons.
 IV.
In determining whether to terminate parental rights, the court must consider and make seven written findings. The court did consider all relevant facts and family history. In re Brianna F., 50 Conn. App. 805,814 (1998).
In addition to the findings previously found in this Memorandum, the court considered and makes these additional findings:
1. 2. The services offered, provided and made available to the CT Page 7239 mother were timely, extensive and appropriate. The above efforts by DCF were reasonable as were the efforts of the Office of Adult Probation.
3. Expectations were set by the court on March 19, 1998:
 — Keep whereabouts known to DCF — whereabouts unknown for long periods.
 — Visit children — children's early attempt at contacts unsuccessful. No regular visits.
— Counseling — see above.
— Enroll and complete substance abuse treatment — see above.
 — Adequate housing/income — relocated to New York from May to September, 1998 and incarcerated from September to December, 1998. Next, at East Inn Hotel but evicted in April, 1999 and returned to York.
— No substance abuse — see above.
— Submit to psychologist evaluation. Done.
 — Attend regular medical appointment regarding Lupus — unclear, but not currently on medication.
4. Children have some bond (feelings and emotions) with mother. At this point, not clear who psychological parents are but probably current or prior foster parents.
5. 6. See above.
7. No unreasonable act or conduct by any person or agency prevented a meaningful relationship with the children. Economic circumstances of mother did not preclude a relationship.
 _________________________
The children are at a stage of life where it is important that they make life choices at this time. Delay in providing stability or permanency is not in their best interest. CT Page 7240
For clear and convincing reasons as described in this Memorandum, termination of the mother's legal rights is in the best interest of her two sons.
 V.
Accordingly, the paternal rights of the mother in her two sons are terminated on the above two grounds.
The Commissioner of the Department of Children and Families is appointed statutory parent and shall comply with § 17a-112 (h).
The court expects DCF to make every effort to maintain the two boys in the same household whether as adoptees or foster children. The court hopes that, as appropriate, the boys can maintain some contact with their mother.
SAMUEL S. GOLDSTEIN JUDGE TRIAL REFEREE